BUCHALTER
A Professional Corporation
DYLAN W. WISEMAN (SBN: 173669)
PHILIP CHAN (SBN: 263907)
500 Capitol Mall, Suite 1900
Sacramento, CA 95814
Telephone: 916.945.5170
Email: dwiseman@buchalter.com
        pchan@buchalter.com

Attorneys for Plaintiff
TRI TOOL, INC.

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

# SACRAMENTO DIVISION

| | |
|---|---|
| TRI TOOL, INC., a Nevada corporation,<br><br>       Plaintiff,<br><br>    vs.<br><br>THAD HALES, an individual;<br>MIKE BRACIKOWSKI, an individual;<br>ENERPAC TOOL GROUP CORP., a Wisconsin corporation; and<br>DOES 1- 30, inclusive,<br><br>       Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:**<br><br>**(1) MISAPPROPRIATION OF TRADE SECRETS (18 U.S.C. § 1836);**<br>**(2) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS;**<br>**(3) BREACH OF CONTRACT;**<br>**(4) BREACH OF DUTY OF LOYALTY;**<br>**(5) VIOLATION OF PENAL CODE § 496; and**<br>**(6) UNFAIR COMPETITION UNDER CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ*.**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff TRI TOOL, INC. ("Tri Tool"), complains and alleges as follows:

## THE PARTIES

1.    Tri Tool is a Nevada corporation incorporated in 1996, with its principal place of business at 3041 Sunrise Boulevard, Rancho Cordova, California 95742.

2.    Defendant THAD HALES ("Hales") is an individual.  Tri Tool is informed and believes, and on that basis alleges, that Hales resides in the State of Tennessee.

3.    Defendant MIKE BRACIKOWSKI ("Bracikowski") is an individual.  Tri Tool is informed and believes, and on that basis alleges, that Bracikowksi resides in the State of Texas.

4.    Defendant ENERPAC TOOL GROUP CORP. ("Enerpac") is a Wisconsin corporation incorporated in 1910, with its principal place of business at N86 W12500 Westbrook Crossing, Menomonee Falls, Wisconsin 53051.  Enerpac is a publicly-traded company on the New York Stock Exchange.

5.    Tri Tool is unaware of the true names and capacities of the remaining defendants, sued as Does 1 through 30, and therefore sues these defendants by such fictitious names.  Tri Tool will amend this Complaint to allege true names and capacities when ascertained.  Tri Tool is informed and believes, and on that basis alleges, that each of the fictitiously-named defendants are in some manner responsible for the harm Tri Tool has incurred, and will continue to incur if injunctive relief is not allowed or damages are not awarded.

6.    Upon information and belief, each of the defendants was and now is the agent, servant, employee, representative and/or alter ego of each of the remaining defendants and, in doing the things hereinafter mentioned, was acting within the scope of his/her/their authority as such agent, servant, employee, and/or representative with the permission and consent of the remaining defendants.

7.    Upon information and belief, Hales and Bracikowski were and now are the agents and/or employees of Enerpac and, in doing the things hereinafter mentioned, were acting within the scope of its authority as such agents and/or employees with the permission and consent of Enerpac and acted in concert therewith.

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

1

COMPLAINT                                                                    CASE NO. _____

## JURISDICTION AND VENUE

8.      This action raises federal questions under the Defend Trade Secrets Act, 18 U.S.C. § 1836 and, thus, this Court has original jurisdiction under 28 U.S.C. § 1331.

9.      This Court has supplemental jurisdiction over the related state law claims asserted in this action pursuant to 28 U.S.C. § 1367 because they are so related to the federal claims providing this Court original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  Indeed, the state law claims arise from the same set of operative facts common to the federal claim, and resolution of those claims serves the interests of judicial economy.

10.      Hales is subject to personal jurisdiction in this Judicial District in connection with this action because he expressly consented to personal jurisdiction in this Judicial District in the Confidentiality, Trade Secret and Disclosure Agreement ("Confidentiality Agreement") with Tri Tool and because he directed his conduct at Tri Tool, which he knew is based in this Judicial District and would therefore feel the brunt of harm caused by his conduct in this District, and because Tri Tool did feel the brunt of such harm in this District.

11.      Bracikowski is subject to personal jurisdiction in this Judicial District in connection with this action because he expressly consented to personal jurisdiction in this Judicial District in the Confidentiality Agreement with Tri Tool and because he directed his conduct at Tri Tool, which he knew is based in this Judicial District and would therefore feel the brunt of harm caused by his conduct in this District, and because Tri Tool did feel the brunt of such harm in this District.

12.      Enerpac is subject to personal jurisdiction in this Judicial District in connection with this action because it directed its conduct at Tri Tool, which it knew is based in this Judicial District and would therefore feel the brunt of harm caused by its conduct in this District, and because Tri Tool did feel the brunt of such harm in this District.

13.      Venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1391(b)(2) and 1391(d).  A substantial part of the events giving rise to the claims occurred in this Judicial District. Further, given that California has more than one judicial district, and Enerpac is subject to personal jurisdiction in California in connection with this action, venue is proper in this Judicial District

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

**COMPLAINT**
BN 72470325v1

CASE NO. _____

because of Enerpac's contacts with this Judicial District would be sufficient to subject it to personal jurisdiction if this Judicial District were a separate State. *See* 28 U.S.C. § 1391(d). Accordingly, Enerpac resides in this Judicial District. *See* 28 U.S.C. §§ 1391(b)(2) and 1391(d).

## FACTUAL ALLEGATIONS

### A.    Tri Tool's Specialized High-Performance Machine Tool Business

14.    Tri Tool is a global leader in the design of high-performance machine tools. Tri Tool was founded in 1972, and it presently conducts business throughout the United States and in over 16 countries. For over 50 years, Tri Tool has partnered with companies in major industrial markets – aerospace, government and defense, life sciences, power generation, oil and gas and semiconductors to develop and manufacture precision machining and custom engineered tools that increase productivity, optimize costs, and accelerate delivery. Tri Tool offers solutions to customers seeking custom-engineered pipe beveling, tube facing and squaring, and tube severing through its offering of precision tools, skilled engineering, and its service.

15.    Due to Tri Tool's investment and diligence over the many decades, it is one of the industry leaders in the high-performance machine tool space in the United States.

16.    Given Tri Tool's substantial investment of resources and time into developing its high-performance machine tool products and services (along with the related confidential and proprietary information, including its trade secrets), these products and services and associated information are extremely valuable to Tri Tool.

### B.    Tri Tool's Confidential, Proprietary, and Trade Secret Information, and Protection Thereof

17.    Tri Tool has invested substantial resources over the course of five decades to develop its confidential and proprietary information (including its Trade Secrets as described below), which are key to its success in the marketplace.

18.    Among other things, Tri Tool has invested substantial resources in developing its quoting and costing of its projects. Tri Tool's quoting and costing is made available to certain employees who have a need-to-know basis for that customer's project. Tri-Tool's quoting and costing of projects enables it to bid competitively to customers in its field of service. Likewise, Tri

Tool has a pipeline of projects that it has identified as viable sources of future revenue. Tri Tool has gathered information about its customer's upcoming projects through years of servicing customers and earning their trust. Information about future projects in the pipeline is closely guarded and made available to employees on a need to know basis.

19.     Tri Tool's trade secrets include valuable non-public, confidential information such as, *inter alia*, its quoting and costing of projects, and its pipeline of upcoming projects. (collectively, "Trade Secrets").

20.     Tri Tool takes the protection of its confidential and proprietary information (including its Trade Secrets) very seriously, in large part because their disclosure to a competitor would cause a significant competitive injury.

21.     Tri Tool protects its confidential information and its Trade Secrets through the use of various policies, procedures, acknowledgments, and other agreements it requires its employees to enter into. One example of a protection measure used by Tri Tool is requiring employees to execute the Confidentiality Agreement as a condition of employment.

22.     The Confidentiality Agreement states, in pertinent part:

> Employee agrees that at all times during or subsequent to his or her employment, he or she will hold in trust, keep confidential and not disclose to any third party or make any use of [Tri Tool's] Confidential Information, except for the benefit of Company and in the course of his or her employment with Company. Employee further agrees not to cause the transmission, removal or transport of Confidential Information from Company's places of business or such other place of business used by Employee, without prior written approval of the President of Company.

23.     The Confidentiality Agreement defines "Confidential Information" as, in relevant part, "all information concerning databases, products, process, . . . specifications, data, . . . strategies, forecasts, unpublished financial statements, budgets, projections, price lists, . . . abstracts or summaries of information, and customer and supplier identities, characteristics and agreements." This definition also includes "information disclosed by Company to Employee but also information developed or learned by Employee during the course of his or her employment with Company."

///

///

**C.    Hales's and Bracikowski's Employment with Tri Tool**

24.    Tri Tool has a team of employees who provide technical support directly to customers and who are dedicated to interfacing between customers and Tri Tool's service departments.  This is generally the role of a Technical Services Manager.  An important job duty of Technical Services Managers is generating leads and sales opportunities for new and existing customers through a variety of channels.

25.    Hales began his employment with Tri Tool in January 2002 as a Field Services Technician.  Over the course of his employment, he was promoted several times.  Until his resignation on May 9, 2022, Hales was a Technical Services Manager.

26.    Hales signed the Confidentiality Agreement upon his hire with Tri Tool.

27.    Bracikowski began his employment with Tri Tool in August 14, 2006 and received several promotions during his tenure.  Until his resignation in May 2022, he was also a Technical Services Manager.

28.    Bracikowski signed the Confidentiality Agreement upon his hire with Tri Tool.

29.    In their capacities as Technical Services Managers, both Hales and Bracikowski had direct access to Tri Tool's confidential and proprietary information as well as its Trade Secrets. They routinely worked with Tri Tool's customers on projects on behalf of Tri Tool.  They also obtained leads for new projects for Tri Tool and prepared bids and requests for proposals for potential projects.

30.    By August of 2021, during their employment, Hales and Bracikowski became disgruntled.  Tri Tool is informed and believes, and on that basis alleges, that Hales and Bracikowki became disgruntled when Sara Henson became their manager in October 2020 because Ms. Henson required them to be accountable.  Hales routinely complained that he was not being paid fairly and complained about his bonus structure in 2021.  Hales also struggled with having a female supervise his work.  Unbeknownst to Tri Tool at the time, at least by August of 2021, Hales let it be known to his co-workers that he was seeking a job with Hydratight, a competitor of Tri Tool, which is a brand owned by Enerpac.

31.    When the revised bonus structure for 2022 was released, Hales complained that he

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

**COMPLAINT**                                                                    CASE NO. _____
BN 72470325v1

believed the bonus was not achievable.  Around this time, his work performance deteriorated.

32.     Tri Tool is informed and believes, and on that basis alleges, that Hales intentionally sabotaged at least one job on which he worked for Tri Tool so that he could reclaim the same job while working for Enerpac—which is Tri Tool's competitor.  Tri Tool has also learned that for a period of about 7 months, Hales informed Tri Tool's customers that he was leaving for Hydratight to attempt to recruit them to divert their business to Hydratight.  All of this occurred while Hales was gainfully employed by Tri Tool.  For example, Tri Tool is informed and believes, and on that basis alleges, that while Hales was employed by Tri Tool, he was the lead contact on a project located in South Carolina.  Hydratight is a competitor to Tri Tool, although there are times in which Tri Tool may use a Hydratight product on a project.  Hales was tasked with trying to complete the job for Tri Tool using Hydratight's Mirage Tapping System product.  Hales submitted the scope of work, drawings, specifications, technical details, and the plan to solve the problem to Hydratight to determine if their machine could be a viable solution.  Meanwhile, he sabotaged that project, forcing Tri Tool to inform the customer that Tri Tool's proposal would not work.  After Hales resigned and became employed with Enerpac—which owns Hydratight—Tri Tool became aware that Hales had diverted that project and utilized the same Hydratight Mirage Tapping System that Tri Tool proposed for the project.

**D.     Hales's and Bracikowski's Resignation from Tri Tool and Employment at Enerpac**

33.     On or about April 5, 2022, Hales requested from Tri Tool a copy of the Confidentiality Agreement he signed.  Tri Tool provided it to him.

34.     On or about April 21, 2022, Bracikowski requested from Tri Tool a copy of the Confidentiality Agreement he signed.  Tri Tool provided it to him.

35.     In May 2022, both Hales and Bracikowski resigned their employment with Tri Tool.

36.     As part of the resignation process, both Hales and Bracikowski were required to return all property belonging to Tri Tool.  This included company computers and cell phones.  Hales returned both of his company computers; however, he engaged in the theft of one of the hard drives for his new computer.  By engaging in this act of theft, Hales sought to cover his tracks and divert

the information housed on Tri Tool's hard drive to Enerpac. Upon information and belief, Hales has used this stolen information for the benefit of Enerpac, and to Tri Tool's detriment and injury. Further, Hales returned his company mobile phone, but he stole and deleted the contacts and the texts from the phone, and it had been reset to factory settings.

37.     Similarly, Bracikowski stole Tri Tool's electronic files by copying them to an external hard drive. He returned his company mobile phone, but would not provide the access code to unlock it.

38.     Soon thereafter, both Hales and Bracikowski became employed by Enerpac under its Hydratight division.

39.     In July 2022, Tri Tool became aware that Hales called one of Tri Tool's customers about a project on which Tri Tool had an ongoing contract. Tri Tool is informed and believes, and on that basis alleges, that its customer informed Hales that there was an existing contract between the customer and Tri Tool and that Hales needed to stop trying to interfere with it.

40.     Tri Tool is informed and believes, and on that basis alleges, that Hales and Bracikowski are improperly soliciting Tri Tool's clients using Tri Tool's confidential and proprietary information and Trade Secrets. Tri Tool is also informed and believes that Hales has exploited the information on the stolen hard drive to gain business on behalf of Enerpac.

## **FIRST CAUSE OF ACTION**

### **(Misappropriation of Trade Secrets (18 U.S.C. § 1836) – Against All Defendants, and Does 1-5)**

41.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in each paragraph above as though fully set forth herein.

42.     This action arises under the Defend Trade Secrets Act of 2016, codified at 18 U.S.C. § 1836 and the claimed trade secrets are related to a product or service used in, or intended for use in, interstate or foreign commerce.

43.     Tri Tool owns valuable confidential and proprietary information and trade secrets, including, but not limited to, Tri Tool's Trade Secrets. Tri Tool has taken commercially reasonable and consistent measures to keep such information secret. Tri Tool derives independent economic

value, actual or potential, from its Trade Secrets not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from disclosure or use of the same.

44.     Tri Tool has expended substantial time, effort, and money in developing Tri Tool's Trade Secrets over the course of nearly 50 years doing business.  Tri Tool's Trade Secrets are vital to maintaining its business and competitive advantages in the marketplace.

45.     Tri Tool's Trade Secrets include the valuable confidential and proprietary information that it has developed and maintained over many years, including that relating to its costs and pricing in preparing bids for projects all throughout the United States, and information about upcoming projects in its domestic pipeline of potential projects.

46.     Tri Tool has also taken a series of commercially-reasonable steps, such as through secured networking, making information available on a need to know basis, password protections, the execution of confidentiality agreements, and other means to maintain the secrecy of Tri Tool's Trade Secrets.

47.     Enerpac obtained Tri Tool's Trade Secrets through a variety of improper means, as Hales and Bracikowski gained access to Tri Tool's Trade Secrets during and through the course of their work with Tri Tool, while being paid by Tri Tool, in the face of at least the Confidentiality Agreement to maintain the secrecy of the information (all of which they willingly undertook in exchange for valuable consideration), and thereafter wrongfully used and disclosed that information to Enerpac for its benefit without Tri Tool's authorization or consent.

48.     Upon information and belief, Enerpac targeted Hales and/or Bracikowski for hire, at least in part, because of their knowledge of and access to Tri Tool's Trade Secrets, and for the purpose of acquiring Tri Tool's Trade Secrets.  Enerpac knew or should have known that Hales and Bracikowski were utilizing Tri Tool's Trade Secrets.

49.     Defendants, and each of them, improperly, and without authorization, and in furtherance of their scheme and conspiracy, improperly acquired Tri Tool's Trade Secrets from Hales and Bracikowski to aid Enerpac in unfairly competing with Tri Tool, and in breach of their confidentiality and other obligations to Tri Tool.

50.    Defendants acquired Tri Tool's Trade Secrets from Hales and Bracikowski and knew, or had reason to know, that they had been acquired through improper means, and without authorization.    Indeed, Tri Tool has informed Enerpac of the impropriety of Hales's and Bracikowski's and their actions on several occasions, including directly to Enerpac and its in-house counsel.  Enerpac has failed to address these concerns.

51.    Enerpac has, and is currently, benefitting from Tri Tool's Trade Secrets and, thus, Tri Tool has, and will continue to, suffer imminent and irreparable harm as a result of Defendants' misappropriation.

52.    Defendants' conduct has caused irreparable harm to Tri Tool, including the loss of goodwill, Tri Tool's competitive advantage, and its business in an amount to be determined at trial, and has resulted in the unjust enrichment of Defendants.  Alternatively, Tri Tool seeks a royalty as provided in 18 U.S.C. § 1836(b)(3).

53.    Upon information and belief, Defendants' misappropriation of Tri Tool's Trade Secrets is ongoing and will continue unless and until temporarily and permanently restrained.  The harm Tri Tool will suffer if Defendants are not restrained includes the loss of its current and potential customers and decreased profits.

54.    Tri Tool has no adequate remedy at law to rectify Defendants' misappropriation.  The misappropriation by Defendants was willful and malicious, thereby entitling Tri Tool to exemplary damages and its attorneys' fees under 18 U.S.C. §1836(b)(3).

WHEREFORE, Tri Tool prays for judgment as hereafter set forth.

## SECOND CAUSE OF ACTION

**(Intentional Interference with Prospective Economic Relations – Against All Defendants, and Does 6-10)**

55.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in each paragraph above as though fully set forth herein.

56.    Tri Tool had an economic relationship with its current customers and prospective customers.

57.    These economic relationships presented a high probability of future economic

1  benefit to Tri Tool, and Tri Tool has invested substantial resources in developing and maintaining

2  with this particular customer.

3      58.     As set forth above, Tri Tool is informed and believes, and on that basis alleges, that

4  while Hales was employed by Tri Tool, he was the lead contact on a project located in South

5  Carolina.  Hales was tasked with trying to complete the job for Tri Tool using a Hydratight product.

6  Unbeknownst to Tri Tool, Hales submitted the scope of work, drawings, specifications, technical

7  details, and the plan to solve the problem to Hydratight to determine if their machine could be a

8  viable solution.

9      59.     Meanwhile, he sabotaged that project forcing Tri Tool to inform the customer that

10  Tri Tool's proposal using Hydratight's product would not work.  After Hales started working for

11  Hydratight, Tri Tool became aware that Hales diverted that same project and utilized the same

12  Hydratight equipment that Tri Tool had initially proposed for implementation on this the project.

13      60.     The conduct alleged herein is independently wrongful in that Hales breached his

14  duty of loyalty, misled Tri Tool, fraudulently represented to the customer that Tri Tool's proposed

15  solution would not work, and then sabotaged the project so that he could transfer the customer's

16  project to Enerpac using the resources and plan developed at Tri Tool.

17      61.     Defendants have willfully and deliberately committed the wrongful acts alleged

18  herein with the intent to interfere with Tri Tool's relations with the customer's project which

19  Defendants knew to exist.

20      62.     Defendants' wrongful acts, as set forth above, caused injurious interference with,

21  and disruption of and termination of Tri Tool's relations with the customer for the project.

22      63.     As a proximate result of Defendants' conduct, Tri Tool has suffered serious injuries

23  and damages to its business and goodwill in an amount to conform to proof at trial, but in no event

24  less than the jurisdictional minimum of this Court.

25      64.     Defendants' acts interfering with Tri Tool's economic relations with its current

26  customers and prospective customers were willful and malicious, and designed to obstruct and

27  otherwise interfere with the successful operation of Tri Tool's business.  Tri Tool, therefore, is

28  entitled to recover exemplary and punitive damages in a sum sufficient to punish Defendants.

1    WHEREFORE, Tri Tool prays for judgment as hereafter set forth.

2    **THIRD CAUSE OF ACTION**

3    **(Breach of Contract – Against Hales and Bracikowski, and Does 11-15)**

4    65.    Plaintiff re-alleges and incorporates by reference each and every allegation
5    contained in each paragraph above as though fully set forth herein.

6    66.    For valuable consideration, Tri Tool and Hales and Bracikowski entered into the
7    Confidentiality Agreements.  (*See* **Exhibits 1** and **2** hereto.)

8    67.    Tri Tool did all, or substantially all, of the significant things the contract required of
9    it under the terms of the Confidentiality Agreements.

10    68.    Both Hales and Bracikowski breached their Confidentiality Agreements by using
11    and disclosing Tri Tool's confidential and proprietary information without its consent or
12    authorization and for the benefit of a competitor.  Hales further breached his Confidentiality
13    Agreement by destroying and failing to return the hard drive on his computer and by resetting his
14    mobile phone to delete Tri Tool's information.

15    69.    As a direct and proximate result of the breach, Tri Tool was harmed.

16    70.    Hales's and Bracikowski's breach of their Confidentiality Agreements was a
17    substantial factor in causing Tri Tool's harm.

18    WHEREFORE, Tri Tool prays for judgment as hereafter set forth.

19    **FOURTH CAUSE OF ACTION**

20    **(Breach of Duty of Loyalty – Against Hales and Bracikowski, and Does 16-20)**

21    71.    Plaintiff re-alleges and incorporates by reference each and every allegation
22    contained in each paragraph above as though fully set forth herein.

23    72.    Hales and Bracikowski were employees of Tri Tool, working most recently as
24    Technical Services Managers.  As a result of that relationship, while they were employed by Tri
25    Tool, they each owed to Tri Tool a duty of loyalty under California common law and California
26    Labor Code sections 2860 through 2863, inclusive.  That duty included, but was not limited to, a
27    requirement that Hales and Bracikowski avoid any conflicts of interest during the performance of
28    their job duties, that they give their time, attention, and effort to perform services on behalf of Tri

Tool, and that they refrain from intentionally turning current and potential customers away from Tri Tool.

73.     Hales and Bracikowski breached their duty of loyalty to Tri Tool.  They did so by undertaking actions while employed with Tri Tool, that were detrimental, inimical, adverse, and contrary to Tri Tool's interests, including soliciting several customers to determine if they would leave Tri Tool or reduce their level of patronage to Tri Tool, and by sabotaging the South Carolina project.  The aforementioned conduct was in violation of their common law and statutory duties of loyalty and enabled Hales and Bracicowski to unfairly compete against Tri Tool, and intentionally turn current and potential customers away from Tri Tool.

74.     Tri Tool is informed and believes, and on that basis alleges, that in breach of their duty of loyalty, Hales and Bracikowski abused their position of trust by concealing all of these efforts and conduct, so that they could purposely harm Tri Tool and assist Tri Tool's competitor to compete unfairly against Tri Tool, on the one hand, while, on the other, still receiving compensation and other benefits from Tri Tool.

75.     Had Tri Tool been aware of such actions undertaken by Hales and Bracikowski while they were employed by Tri Tool, Tri Tool would have terminated their employment immediately and ceased paying all salaries, benefits, and other amounts to them in connection with their employment.

76.     Tri Tool is informed and believes, and on that basis alleges, that, as a direct and proximate result of Hales's and Bracikowski's breach of their duty of loyalty, Tri Tool has been damaged in an amount in excess of the jurisdictional minimum to be determined at trial.  Those damages include, but are not limited to: (1) loss of business or profits that Tri Tool expected to receive but did not because of Hales's and Bracikowski's actions; (2) the damages caused to Tri Tool, its business, operations, and relationships because of Hales's and Bracikowski's actions; and (3) the salary, benefits, and other amounts paid by Tri Tool to Hales and Bracikowski during the time that they were employed by Tri Tool but undertaking the disloyal actions described above.

77.     Hales and Bracikowski committed the acts alleged herein maliciously, fraudulently, and with the wrongful and deliberate intention of injuring Tri Tool and benefiting themselves, and

1  acted with an improper motive amounting to malice and with conscious disregard of Tri Tool's

2  rights.  Accordingly, Tri Tool is entitled to recover punitive and exemplary damages from Hales

3  and Bracikowski.

4         WHEREFORE, Tri Tool prays for judgment as hereafter set forth.

### FIFTH CAUSE OF ACTION

**(Violation of Penal Code § 496(c) – Against All Defendants, and Does 21-25)**

7         78.    Plaintiff re-alleges and incorporates by reference each and every allegation

8  contained in each paragraph above as though fully set forth herein.

9         79.    Defendants stole and engaged in the theft of the hard drive on Tri Tool's laptop.

10  Likewise, Defendants stole the information from the Tri Tool mobile phone which was its sole and

11  exclusive property.  Defendants also stole the information kept on the external hard drive that

12  Bracikowski utilized.   Upon information and belief, Defendants thereafter used the stolen property

13  for their own benefit.  Defendants acted in a manner constituting theft which Defendants knew, or

14  should have known, was done in such a manner in violation of California Penal Code section

15  496(a).

16         80.    Defendant's actions, as alleged above, have directly and proximately caused injury

17  to Tri Tool, entitling Tri Tool to their actual damages resulting from such conduct, treble damages,

18  costs of suit and attorneys' fees in accordance with California Penal Code section 496(c).

19         WHEREFORE, Tri Tool prays for judgment as hereafter set forth.

### SIXTH CAUSE OF ACTION

**(Unfair Competition Under Cal. Bus. & Prof. Code §§ 17200, *et seq.* – Against All**

**Defendants, and Does 26-30)**

23         81.    Plaintiff re-alleges and incorporates by reference each and every allegation

24  contained in each paragraph above as though fully set forth herein.

25         82.    The wrongful conduct of Defendants, as alleged above, constitutes unlawful, unfair,

26  and fraudulent business acts and practices in violation of the California Unfair Competition Law

27  ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, and common law.

28         83.    California Business and Professions Code section 17203 authorizes injunctive and

restitutionary relief against any person who has engaged or proposes to engage in unfair competition. Unless and until enjoined, Defendants, and each of them, will continue to engage in the unlawful, unfair and deceptive business practices alleged herein.

84. As a direct and proximate result of Defendants' statutory unfair competition, Defendants have been unjustly enriched and are subject to disgorgement in an amount to be determined at trial.

85. Tri Tool requests that the Court issue injunctive relief against Defendants and their agents, servants, employees, and all person acting thereunder, in concert with, or on their behalf. Defendants are causing irreparable injury to Tri Tool's business, reputation, goodwill, and trade secrets.

WHEREFORE, Tri Tool prays for judgment as hereafter set forth.

## **PRAYER FOR RELIEF**

WHEREFORE, Tri Tool prays for relief as follows:

1. For entry of judgment against Defendants, as set forth above;

2. For injunctive relief to prevent the unlawful use of Tri Tool's Trade Secrets and to enjoin the other false, misleading and unfair business practices deployed by Defendants;

3. For injunctive relief requiring Defendants to immediately return all such confidential and proprietary and Trade Secret information to Tri Tool;

4. For an award to Tri Tool of monetary and consequential damages, costs, and reasonable attorney's fees as may be provided by law;

5. For an award to Tri Tool of all amounts by which Defendants have been unjustly enriched, including, without limitation, Defendants' profits attributable to Defendants' unauthorized conduct;

6. For an award to Tri Tool of a reasonable royalty as available by statute;

7. For exemplary damages against Defendants as set forth above;

8. For treble damages under Penal Code 496(c);

9. For punitive damages against Defendants sufficient to deter further unlawful conduct;

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

**COMPLAINT**                                    CASE NO. _____
BN 72470325v1

1       10.     For reasonable attorneys' fees and costs pursuant to contract or statute;

2       11.     For an award to Tri Tool of pre-and post-judgment interest as may be provided by

3 law; and

4       12.     For an award to Tri Tool of such other and further relief as this Court deems just

5 and proper.

6

7 Dated: August 29, 2022            BUCHALTER, A Professional Corporation

8                           By:*/s/Dylan W. Wiseman*

9                              Dylan W. Wiseman

10                            Attorneys for Plaintiff
                               TRI TOOL, INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

15

COMPLAINT                           CASE NO. _____

BN 72470325v1

1

## **DEMAND FOR JURY TRIAL**

2
       Plaintiff TRI TOOL, INC. hereby demands a trial by jury on every issue on which it is so

3
entitled.

4

5
Dated:  August 29, 2022                BUCHALTER, A Professional Corporation

6
By:*/s/Dylan W. Wiseman*
          Dylan W. Wiseman

7
          Attorneys for Plaintiff

8
          TRI TOOL, INC.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

# TRI TOOL INC.

## CONFIDENTIALITY, TRADE SECRET AND DISCLOSURE AGREEMENT

This Confidentiality, Trade Secret and Disclosure Agreement (hereinafter "Agreement") is entered into by and between TRI TOOL INC.™ (hereinafter "Company"), and ___*Thad Franklin Hales*___, (hereinafter "Employee").

In consideration of the commencement and continuation of Employee's employment and the compensation paid to Employee, Employee hereby acknowledges and agrees with Company as follows:

PART 1

EFFECTIVE DATE

This Agreement shall become effective on the earlier of (1) commencement of Employee's employment with Company, or (2) the date and time at which any Confidential Information (as defined in Section 2.1 below) was or is first disclosed to Employee.

1

Form506a.tti

PART II

PROTECTION OF COMPANY'S CONFIDENTIAL

INFORMATION, NON-COMPETITION AND INTELLECTUAL PROPERTY

2.1    **Confidential Information**. Company has and will develop, compile and own certain proprietary materials and techniques and confidential information which have great value in its business (hereinafter "Confidential Information"). Confidential Information includes, but is not limited to, all information concerning databases, source code, object code and other computer programs, products, processes, formulas, trade secrets, innovations, inventions, discoveries, improvements, techniques, research or development and test results, specifications, data, know-how, formats, marketing plans, business plans, strategies, forecasts, unpublished financial statements, budgets, projections, price lists, advertising and promotion budgets, patterns, devises, compilations, abstracts or summaries of information, and customer and supplier identities, characteristics and agreements. Confidential Information includes not only information disclosed by Company to Employee but also information developed or learned by Employee during the course of his or her employment with Company. Confidential Information is to be broadly defined, and includes all proprietary information which has or could have commercial value or other utility due to its confidentiality in the business in which Company is engaged or contemplates engaging or the unauthorized disclosure of which could be detrimental to the interest of Company, whether or not such information is identified to Employee as Confidential Information by Company.

2

Employee will not, either during the term of Employee's employment or any time in the future, directly or indirectly:

disclose or furnish, directly or indirectly, to any other person, firm, agency, corporation, client, business, or enterprise, any Confidential Information disclosed to or acquired by Employee during the term of this Agreement;

individually or in conjunction with any other person, firm, agency, company, client, business, or corporation, employ or cause to be employed any Confidential Information in any manner whatsoever, except in furtherance of the business of Company;

without the written consent of Company, publish, deliver, or commit to being published or delivered, any copies, abstracts, or summaries of any files, records, documents, drawings, specifications, lists, equipment and similar items relating to the business of Company, whether prepared by Employee or otherwise coming into Employee's possession, except to the extent required in the ordinary course of Company's business;

attempt to encourage, induce, or otherwise solicit, directly or indirectly, any other employee of Company to breach an employment agreement with Company or to otherwise interfere with the advantageous business relationship of Company with its employees.

3

All files of any kind or nature, including but not limited to paper and computer, records, documents, drawings, specifications, lists, equipment, and similar items relating to the business of Company, whether prepared by Employee or otherwise coming into Employee's possession as a result of his or her employment with Employer shall remain the exclusive property of Company and shall not be removed from the premises of Company under any circumstances whatsoever without the prior written consent of an officer of Company.

Upon termination of Employee's employment, Employee agrees to immediately return to Company all property of Company in as good condition as when received by Employee (normal wear and tear excepted) including, but not limited to, all files, records, documents, drawings, specifications, lists, equipment and supplies, promotional materials, and similar items relating to the business of Company.

2.2    **Protection of Confidential Information**.  Employee agrees that at all times during or subsequent to his or her employment, he or she will hold in trust, keep confidential and not disclose to any third party or make any use of Company's Confidential Information, except for the benefit of Company and in the course of his or her employment with Company.  Employee further agrees not to cause the transmission, removal or transport of Confidential Information from Company's places of business or such other place of business used by Employee, without prior written approval of the President of Company

2.3    **Non-Competition During Employment**.  Except with the express prior written consent of the President of Company, Employee agrees that he or she will not, during the period of his or her employment with Company and as to clause (iii) below for a period of one (1) year after termination of such employment:  (i) engage in any employment or activity other than for Company in any business in which Company is engaged or contemplates engaging; (ii) induce any other employee of or consultant to Company to engage in any such employment or activity; or (iii) solicit any customers or potential customers of Company for services and/or products similar to those performed by Company.

Form506a.tti

2.4    **Inventions, Patents and Discoveries**.  Employee agrees to fully and promptly disclose and assign to Company any and all rights to and ownership interests in improvements, discoveries, inventions, patentable devices developed or conceived by Employee, either solely or with others, using Company's equipment, supplies, facilities, or trade secret information, or which relate to Company's actual or anticipated business and/or research and development, or which result from any work performed by Employee for Company and patents rights on said improvements, discoveries, inventions and patentable devices, and any patents granted on said improvements, discoveries, inventions and patentable devices.

Employee agrees to assign during employment with Company at the request of Company any and all rights to and ownership interests in said improvements, discoveries, inventions, patentable devices, patent rights and patents granted thereon and agrees to cooperate fully with Company, upon the request of Company, in the assignment to Company of any and all rights to and ownership interests in said improvements, discoveries, inventions, patentable devices, and patent applications pertaining thereto and patents granted thereon.

Employee agrees to cooperate fully upon request by Company in preparing, executing and drafting patent applications for any such improvements, discoveries, inventions, and patentable devices, and all other documents deemed necessary by Company for filing, processing and prosecuting such applications and patents in the United States and any foreign countries, and vesting said rights to and ownership interests in said improvements, discoveries, inventions and patentable devices in Company.

Employee shall designate in Exhibit A hereto any and all inventions developed by Employee prior to entering into the employment relationship, which Employee wishes to have excluded from the application of this Agreement.

Form506a.tti

2.5 **Copyrightable Material**.

Employee agrees and acknowledges that all copyrightable work, whether copyrighted or not, or works made-for-hire, as defined by federal law, which are created by Employee, solely or jointly with others, within the scope of employment, shall be owned by Company and shall be the sole and exclusive property of Company. Employee understands and acknowledges that <u>no</u> title in any such copyrightable work shall vest in Employee and Employee shall have no right to or ownership interest in said copyrightable work.

    a.    Employee agrees to cooperate fully upon request by Company in preparing, executing and drafting copyright applications and/or assignments on any and all such copyrightable work. Employee agrees to cooperate fully in executing and processing all papers deemed necessary by Company for filing, processing and prosecuting such applications and copyrights in the United States and any foreign countries.

2.6 **Return of Materials to Company**. During employment with Company, Employee shall promptly deliver to Company or its nominee, upon request, all notebooks, reports, letters, copies, manuals, drawings, blueprints and all other materials relating to Company's rights to actual or potential trade secrets, patentable works, patents, inventions, copyrightable works, copyrights, proprietary information and other such confidential information in Employee's possession or control.

2.7 **Discharge of Obligations Upon Termination of Employment**. Upon said termination, Employee will discharge all the obligations under this Agreement without additional compensation from Company but with reimbursement for reasonable and necessary expenses by Company.

Form506a.ttl

2.8    **Company's Right to Decline Inventions**.  Company agrees that if it does not desire an invention made by Employee hereunder, it will provide Employee, upon request, a written statement to such effect signed by one of its officers.

## PART III
## PRIOR KNOWLEDGE AND RELATIONSHIPS

3.1    **Prior Knowledge**.  Except as disclosed on Schedule B to this Agreement, Employee does not know of any of Company's Confidential Information, other than the information he or she has learned from Company.

3.2    **Prior Commitments**.  Employee has no other agreements, relationships or commitments to any other person or entity which conflict with Employee's obligations to Company under this Agreement.

3.3    **Proprietary Information Or Trade Secrets Of Others**.  Employee will not disclose to Company or use, or induce Company to use, any proprietary information or trade secrets of others.  Employee represents and warrants that he or she returned all property and Confidential Information belonging to all prior employers.

## PART IV
## ASSIGNMENT

4.1    **Prior Inventions**.  Employee acknowledges that except for the inventions disclosed on Schedule A, Employee does not have any right or claim in any invention, idea, process, formula, discovery, copyright, patent or other such item.

4.2    **Subsequent Invention Disclosure**.  In consideration for employment by Company, Employee hereby agrees to promptly disclose to Company any and all inventions which he or she develops during the term of his or her employment.

Form506a.tti

4.3   **Necessary Acts**.   Employee hereby agrees to perform, during and after employment with Company, all acts deemed necessary or desirable by Company to permit and assist Company, at Company's expense, in obtaining and enforcing the full benefits, enjoyment, rights and title, throughout the world, and the inventions hereby assigned by Employee to Company as set forth above.

PART V

TERMINATION OF EMPLOYMENT

5.1   **Delivery of Documents, Data and Confidential Information Upon Termination of Employment.**   In the event of termination of Employee's employment with Company (voluntary or otherwise), Employee agrees, promptly and without request, to deliver to and inform Company of all documents and data pertaining to his or her employment and Company's Confidential Information, whether prepared by Employee or otherwise coming into his or her possession and to sign Schedule C to this Agreement.   Employee will not retain any written or other tangible material containing any information concerning or disclosing any of Company's Confidential Information.

5.2   **Obligations of Employee Subsequent to Employment**.   In the event of termination (voluntary or otherwise) of Employee's employment with Company, Employee agrees that he or she will protect the value of Company's Confidential Information and prevent the misappropriation or disclosure thereof.   Employee will not disclose or use to his or her benefit (or the benefit of any third party) or to the detriment of Company any Confidential Information.

Form506a.tti

PART VI

ADDITIONAL PROVISIONS

6.1 **Injunctive Relief**.  Since Employee's breach of this Agreement may cause Company irreparable harm for which money is inadequate compensation, Employee agrees that Company will be entitled to injunctive relief to enforce this Agreement, in addition to damages and other available remedies.

6.2 **Understanding**.  Employee acknowledges and agrees that the protections set forth in this Agreement were a material condition to his or her employment with and compensation by Company.

6.3 **Employment at Will**.  Nothing contained in this Confidentiality Agreement shall limit or otherwise alter the terms of Employee's employment as set forth in his or her Employment Agreement, including but not limited to the at-will status of his or her employment.

6.4 **Governing Laws**.  It is the intention of the parties hereto that the internal laws of the State of California, U.S.A. (irrespective of its choice of law principles) shall govern the validity of this Agreement, the construction of its terms, and the interpretation and enforcement of the rights and duties of the parties hereto.

6.5 **Forum Selection**.  It is the intention of the parties hereto that, in any dispute arising out of this Agreement, such dispute shall be heard before the court of appropriate jurisdiction located in the County of Sacramento, California U.S.A.

6.6 **Binding Upon Successors and Assigns**.  Subject to, and unless otherwise provided in, this Agreement, each and all of the covenants, terms provisions and agreements contained herein shall be binding upon and inure to the benefit of, the permitted successors, executors, heirs, representatives, administrators and assigns of the parties hereto.

Form506a.tti

6.7    **Severability.** If any provisions of this Agreement, or the application thereof, shall for any reason and to any extent, be invalid or unenforceable, the remainder of this Agreement and application of such provisions to other persons or circumstances shall be interpreted so as to reasonably effect the intent of the parties hereto. The parties further agree to replace such void or unenforceable provisions of this Agreement with valid and enforceable provisions which will achieve, to the extent possible, the economic, business and other purposes of the void or unenforceable provisions.

6.8    **Entire Agreement**. This Agreement, the exhibits hereto, the documents referenced herein, and the exhibits thereto, constitute the entire understanding and agreement of the parties hereto with respect to the subject matter hereof and thereof and supersede all prior and contemporaneous agreements or understandings, inducements or conditions, express or implied, written or oral, between the parties with respect hereto and thereto. The express terms hereof control and supersede any course of performance or usage of the trade inconsistent with any of the terms hereof.

6.9    **Other Remedies**. Any and all remedies herein expressly conferred upon a party shall be deemed cumulative with and not exclusive of any other remedy conferred hereby or by law on such party, and the exercise of any one remedy shall not preclude the exercise of any other.

6.10   **Amendment and Waivers**. Any term or provision of this Agreement may be amended, and the observance of any term of this Agreement may be waived (either generally or in any particular instance and either retroactively or prospectively) only by a writing signed by the party to be bound thereby. The waiver by a party of any breach hereof for default in payment of any amount due hereunder or default in the performance hereof shall not be deemed to constitute a waiver of any succeeding breach or default.

Form506a.tti

6.11 **No Waiver**. The failure of any party to enforce any of the provisions hereof shall not be construed to be a waiver of the right of such party thereafter to enforce such provisions.

6.12 **Attorneys' Fees**. Should any proceeding be brought to enforce or interpret any part of this Agreement, the prevailing party shall be entitled to recover, as an element of the costs of suit and not as damages, reasonable attorneys' fees. The prevailing party shall be the party entitled to recover its costs. A party not entitled to recover its costs shall not be entitled to recover attorneys' fees. No sum for attorneys' fees shall be counted in calculating the amount of a judgment for purposes of determining if a party is entitled to recover costs or attorneys' fees.

6.13 **Pronouns.** All pronouns and any variations thereof shall be deemed to refer to the masculine, feminine or neuter, singular or plural, as the identity of the person, persons, entity or entities may require.

6.14 **Further Assurances**. Each party agrees to cooperate fully with the other parties and to execute such further instruments, documents and agreements and to give such further written assurances, as may be reasonably requested by any other party to carry into effect the intents and purposes of this Agreement.

Date: _1-28-02_

Signature

_Thad Franklin Hales_
Print Name

Address for Notifications:

_Thad Franklin Hales_
_3242 Priestwoods Dr._
_Nashville TN 37214_

Date: _1-31-02_

TRI TOOL INC.

By: _Judith Dousey_
(Signature)

_Tousey_

Title: _Exec Secretary_

11                                        Form506a.tti

<u>SCHEDULE A</u>

Except as set forth below, I hereby acknowledge that at this time I have no right, title or other interest in any invention, patent, copyright or other such material other than the following (if none, so state):

_____

_____ None _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Dated: _____1-28-02_____

_____
Signature

12

Form506a.tti

## SCHEDULE B

1.  Confidential Information.  Except as set forth below, I acknowledge at this time that I know nothing about the business of Company or Company's Confidential Information, except information which has been disclosed to me by Company (if none, so state):

    _____ None _____

    _____

    _____

    _____

2.  Conflicting Relationships.  Except as set forth below, I acknowledge that I have no other current or prior agreements, relationships or commitments which conflict with my relationship with Company under my Confidentiality Agreement (if none, so state):

    _____ None _____

    _____

    _____

    _____

Dated: _____ 1-28-02 _____

_____
Employee Signature

## SCHEDULE C

## TERMINATION CERTIFICATION

This is to certify that I do not have in my possession, nor have I failed to return, any confidential information or copies of them, or other documents or materials, equipment or other property belonging to Company.

I further certify that I have complied with and will continue to comply with all the terms of the Confidentiality Agreement which I signed.

I further agree that, in compliance with the Confidentiality Agreement, I will preserve as confidential and not use any or all Confidential Information which has or could have commercial value or other utility in the business in which Company is engaged or contemplates engaging or in unauthorized disclosure of which could be detrimental to the interests of Company, whether or not such information is identified as Confidential Information by the Company.

Dated:_____        _____

_____

Signature of Employee

Form506a.tti

# EXHIBIT B

# TRI TOOL INC.

<u>**CONFIDENTIALITY, TRADE SECRET AND DISCLOSURE AGREEMENT**</u>

This Confidentiality, Trade Secret and Disclosure Agreement (hereinafter "Agreement") is entered into by and between TRI TOOL INC. (hereinafter "Company", and <u>Michael R. Bracikowski</u>, (hereinafter "Employee").

In consideration of the commencement and continuation of Employee's employment and the compensation paid to Employee, Employee hereby acknowledges and agrees with Company as follows:

## PART 1
## EFFECTIVE DATE

This Agreement shall become effective on the earlier of (1) commencement of Employee's employment with Company, or (2) the date and time at which any Confidential Information (as defined in Section 2.1 below) was or is first disclosed to Employee.

**PART II**

**PROTECTION OF COMPANY'S CONFIDENTIAL**

**INFORMATION, NON-COMPETITION AND INTELLECTUAL PROPERTY**

2.1     **Confidential Information**.     Company has and will develop, compile and own certain proprietary materials and techniques and confidential information which have great value in its business (hereinafter "Confidential Information").     Confidential Information includes, but is not limited to, all information concerning databases, source code, object code and other computer programs, products, processes, formulas, trade secrets, innovations, inventions, discoveries, improvements, techniques, research or development and test results, specifications, data, know-how, formats, marketing plans, business plans, strategies, forecasts, unpublished financial statements, budgets, projections, price lists, advertising and promotion budgets, patterns, devises, compilations, abstracts or summaries of information, and customer and supplier identities, characteristics and agreements.     Confidential Information includes not only information disclosed by Company to Employee but also information developed or learned by Employee during the course of his or her employment with Company.     Confidential Information is to be broadly defined, and includes all proprietary information which has or could have commercial value or other utility due to its confidentiality in the business in which Company is engaged or contemplates engaging or the unauthorized disclosure of which could be detrimental to the interest of Company, whether or not such information is identified to Employee as Confidential Information by Company.

Employee will not, either during the term of Employee's employment or any time in the future, directly or indirectly:

disclose or furnish, directly or indirectly, to any other person, firm, agency, corporation, client, business, or enterprise, any Confidential Information disclosed to or acquired by Employee during the term of this Agreement;

individually or in conjunction with any other person, firm, agency, company, client, business, or corporation, employ or cause to be employed any Confidential Information in any manner whatsoever, except in furtherance of the business of Company;

without the written consent of Company, publish, deliver, or commit to being published or delivered, any copies, abstracts, or summaries of any files, records, documents, drawings, specifications, lists, equipment and similar items relating to the business of Company, whether prepared by Employee or otherwise coming into Employee's possession, except to the extent required in the ordinary course of Company's business;

attempt to encourage, induce, or otherwise solicit, directly or indirectly, any other employee of Company to breach an employment agreement with Company or to otherwise interfere with the advantageous business relationship of Company with its employees.

All files of any kind or nature, including but not limited to paper and computer, records, documents, drawings, specifications, lists, equipment, and similar items relating to the business of Company, whether prepared by Employee or otherwise coming into Employee's possession as a result of his or her employment with Employer shall remain the exclusive property of Company and shall not be removed from the premises of Company under any circumstances whatsoever without the prior written consent of an officer of Company.

Upon termination of Employee's employment, Employee agrees to immediately return to Company all property of Company in as good condition as when received by Employee (normal wear and tear excepted) including, but not limited to, all files, records, documents, drawings, specifications, lists, equipment and supplies, promotional materials, and similar items relating to the business of Company.

2.2 **Protection of Confidential Information**.  Employee agrees that at all times during or subsequent to his or her employment, he or she will hold in trust, keep confidential and not disclose to any third party or make any use of Company's Confidential Information, except for the benefit of Company and in the course of his or her employment with Company.  Employee further agrees not to cause the transmission, removal or transport of Confidential Information from Company's places of business or such other place of business used by Employee, without prior written approval of the President of Company

2.3 **Non-Competition During Employment**.  Except with the express prior written consent of the President of Company, Employee agrees that he or she will not, during the period of his or her employment with Company and as to clause (iii) below for a period of one (1) year after termination of such employment:  (i) engage in any employment or activity other than for Company in any business in which Company is engaged or contemplates engaging; (ii) induce any other employee of or consultant to Company to engage in any such employment or activity; or (iii) solicit any customers or potential customers of Company for services and/or products similar to those performed by Company.

2.4    **Inventions, Patents and Discoveries**.  Employee agrees to fully and promptly disclose and assign to Company any and all rights to and ownership interests in improvements, discoveries, inventions, patentable devices developed or conceived by Employee, either solely or with others, using Company's equipment, supplies, facilities, or trade secret information, or which relate to Company's actual or anticipated business and/or research and development, or which result from any work performed by Employee for Company and patents rights on said improvements, discoveries, inventions and patentable devices, and any patents granted on said improvements, discoveries, inventions and patentable devices.

Employee agrees to assign during employment with Company at the request of Company any and all rights to and ownership interests in said improvements, discoveries, inventions, patentable devices, patent rights and patents granted thereon and agrees to cooperate fully with Company, upon the request of Company, in the assignment to Company of any and all rights to and ownership interests in said improvements, discoveries, inventions, patentable devices, and patent applications pertaining thereto and patents granted thereon.

Employee agrees to cooperate fully upon request by Company in preparing, executing and drafting patent applications for any such improvements, discoveries, inventions, and patentable devices, and all other documents deemed necessary by Company for filing, processing and prosecuting such applications and patents in the United States and any foreign countries, and vesting said rights to and ownership interests in said improvements, discoveries, inventions and patentable devices in Company.

Employee shall designate in Exhibit A hereto any and all inventions developed by Employee prior to entering into the employment relationship, which Employee wishes to have excluded from the application of this Agreement.

2.5 **Copyrightable Material**.

Employee agrees and acknowledges that all copyrightable work, whether copyrighted or not, or works made-for-hire, as defined by federal law, which are created by Employee, solely or jointly with others, within the scope of employment, shall be owned by Company and shall be the sole and exclusive property of Company. Employee understands and acknowledges that <u>no</u> title in any such copyrightable work shall vest in Employee and Employee shall have no right to or ownership interest in said copyrightable work.

a.    Employee agrees to cooperate fully upon request by Company in preparing, executing and drafting copyright applications and/or assignments on any and all such copyrightable work. Employee agrees to cooperate fully in executing and processing all papers deemed necessary by Company for filing, processing and prosecuting such applications and copyrights in the United States and any foreign countries.

2.6    **Return of Materials to Company**. During employment with Company, Employee shall promptly deliver to Company or its nominee, upon request, all notebooks, reports, letters, copies, manuals, drawings, blueprints and all other materials relating to Company's rights to actual or potential trade secrets, patentable works, patents, inventions, copyrightable works, copyrights, proprietary information and other such confidential information in Employee's possession or control.

2.7    **Discharge of Obligations Upon Termination of Employment**. Upon said termination, Employee will discharge all the obligations under this Agreement without additional compensation from Company but with reimbursement for reasonable and necessary expenses by Company.

2.8    **Company's Right to Decline Inventions**. Company agrees that if it does not desire an invention made by Employee hereunder, it will provide Employee, upon request, a written statement to such effect signed by one of its officers.

## PART III
## PRIOR KNOWLEDGE AND RELATIONSHIPS

3.1  **Prior Knowledge**.  Except as disclosed on Schedule B to this Agreement, Employee does not know of any of Company's Confidential Information, other than the information he or she has learned from Company.

3.2  **Prior Commitments**.  Employee has no other agreements, relationships or commitments to any other person or entity which conflict with Employee's obligations to Company under this Agreement.

3.3  **Proprietary Information Or Trade Secrets Of Others**.  Employee will not disclose to Company or use, or induce Company to use, any proprietary information or trade secrets of others.  Employee represents and warrants that he or she returned all property and Confidential Information belonging to all prior employers.

## PART IV
## ASSIGNMENT

4.1  **Prior Inventions**.  Employee acknowledges that except for the inventions disclosed on Schedule A, Employee does not have any right or claim in any invention, idea, process, formula, discovery, copyright, patent or other such item.

4.2  **Subsequent Invention Disclosure**.  In consideration for employment by Company, Employee hereby agrees to promptly disclose to Company any and all inventions which he or she develops during the term of his or her employment.

4.3  **Necessary Acts**.  Employee hereby agrees to perform, during and after employment with Company, all acts deemed necessary or desirable by Company to permit and assist Company, at Company's expense, in obtaining and enforcing the full benefits, enjoyment, rights and title, throughout the world, and the inventions hereby assigned by Employee to Company as set forth above.

**PART V**

**TERMINATION OF EMPLOYMENT**

5.1 **Delivery of Documents, Data and Confidential Information Upon Termination of Employment.** In the event of termination of Employee's employment with Company (voluntary or otherwise), Employee agrees, promptly and without request, to deliver to and inform Company of all documents and data pertaining to his or her employment and Company's Confidential Information, whether prepared by Employee or otherwise coming into his or her possession and to sign Schedule C to this Agreement. Employee will not retain any written or other tangible material containing any information concerning or disclosing any of Company's Confidential Information.

5.2 **Obligations of Employee Subsequent to Employment.** In the event of termination (voluntary or otherwise) of Employee's employment with Company, Employee agrees that he or she will protect the value of Company's Confidential Information and prevent the misappropriation or disclosure thereof. Employee will not disclose or use to his or her benefit (or the benefit of any third party) or to the detriment of Company any Confidential Information.

**PART VI**

**ADDITIONAL PROVISIONS**

6.1 **Injunctive Relief**.  Since Employee's breach of this Agreement may cause Company irreparable harm for which money is inadequate compensation, Employee agrees that Company will be entitled to injunctive relief to enforce this Agreement, in addition to damages and other available remedies.

6.2 **Understanding**.  Employee acknowledges and agrees that the protections set forth in this Agreement were a material condition to his or her employment with and compensation by Company.

6.3 **Employment at Will**.  Nothing contained in this Confidentiality Agreement shall limit or otherwise alter the terms of Employee's employment as set forth in his or her Employment Agreement, including but not limited to the at-will status of his or her employment.

6.4 **Governing Laws**.  It is the intention of the parties hereto that the internal laws of the State of California, U.S.A. (irrespective of its choice of law principles) shall govern the validity of this Agreement, the construction of its terms, and the interpretation and enforcement of the rights and duties of the parties hereto.

6.5 **Forum Selection**.  It is the intention of the parties hereto that, in any dispute arising out of this Agreement, such dispute shall be heard before the court of appropriate jurisdiction located in the County of Sacramento, California U.S.A.

6.6 **Binding Upon Successors and Assigns**.  Subject to, and unless otherwise provided in, this Agreement, each and all of the covenants, terms provisions and agreements contained herein shall be binding upon and inure to the benefit of, the permitted successors, executors, heirs, representatives, administrators and assigns of the parties hereto.

6.7 **Severability.** If any provisions of this Agreement, or the application thereof, shall for any reason and to any extent, be invalid or unenforceable, the remainder of this Agreement and application of such provisions to other persons or circumstances shall be interpreted so as to reasonably effect the intent of the parties hereto. The parties further agree to replace such void or unenforceable provisions of this Agreement with valid and enforceable provisions which will achieve, to the extent possible, the economic, business and other purposes of the void or unenforceable provisions.

6.8 **Entire Agreement**. This Agreement, the exhibits hereto, the documents referenced herein, and the exhibits thereto, constitute the entire understanding and agreement of the parties hereto with respect to the subject matter hereof and thereof and supersede all prior and contemporaneous agreements or understandings, inducements or conditions, express or implied, written or oral, between the parties with respect hereto and thereto. The express terms hereof control and supersede any course of performance or usage of the trade inconsistent with any of the terms hereof.

6.9 **Other Remedies**. Any and all remedies herein expressly conferred upon a party shall be deemed cumulative with and not exclusive of any other remedy conferred hereby or by law on such party, and the exercise of any one remedy shall not preclude the exercise of any other.

6.10 **Amendment and Waivers**. Any term or provision of this Agreement may be amended, and the observance of any term of this Agreement may be waived (either generally or in any particular instance and either retroactively or prospectively) only by a writing signed by the party to be bound thereby. The waiver by a party of any breach hereof for default in payment of any amount due hereunder or default in the performance hereof shall not be deemed to constitute a waiver of any succeeding breach or default.

6.11 **No Waiver**. The failure of any party to enforce any of the provisions hereof shall not be construed to be a waiver of the right of such party thereafter to enforce such provisions.

6.12 <u>**Attorneys' Fees**</u>.  Should any proceeding be brought to enforce or interpret any part of this Agreement, the prevailing party shall be entitled to recover, as an element of the costs of suit and not as damages, reasonable attorneys' fees.  The prevailing party shall be the party entitled to recover its costs.  A party not entitled to recover its costs shall not be entitled to recover attorneys' fees.  No sum for attorneys' fees shall be counted in calculating the amount of a judgment for purposes of determining if a party is entitled to recover costs or attorneys' fees.

6.13 <u>**Pronouns.**</u>  All pronouns and any variations thereof shall be deemed to refer to the masculine, feminine or neuter, singular or plural, as the identity of the person, persons, entity or entities may require.

6.14 <u>**Further Assurances**</u>.  Each party agrees to cooperate fully with the other parties and to execute such further instruments, documents and agreements and to give such further written assurances, as may be reasonably requested by any other party to carry into effect the intents and purposes of this Agreement.

Date: 8/14/06

Signature

Michael R. Bracikowski
Print Name

\*\*\*Current Address for Notifications:\*\*\*
(be sure to complete this info)

320 Patrick Circle

Melbourne FL 32901

Date: 8/14/06

TRI TOOL INC.

By: Matt Brooks
(Signature)

Matt Brooks
Print Name

Title: General Manager – Services Division