1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   TRI TOOL, INC.,                          No.  22-cv-01515-DAD-KJN

12              Plaintiff,

13        v.                                   ORDER GRANTING IN PART AND
                                               DENYING IN PART DEFENDANT
14   THAD HALES, et al.,                       ENERPAC TOOL GROUP CORP.'S MOTION
                                               TO DISMISS CERTAIN CLAIMS
15              Defendants.
                                               (Doc. No. 10)
16

17          This matter is before the court on the motion to dismiss certain claims filed by defendant

18   Enerpac Tool Group Corp. ("Enerpac") on October 10, 2022.  (Doc. No. 10.)  On November 7,

19   2022, the pending motion was taken under submission on the papers.  (Doc. No. 15.)  For the

20   reasons explained below, defendant Enerpac's motion to dismiss will be granted in part and

21   denied in part, with leave to amend.

22                                    **BACKGROUND**

23          On August 29, 2022, plaintiff Tri Tool, Inc. ("Tri Tool"), a company that designs high

24   performance machine tools, filed the complaint initiating this trade secrets action against two of

25   its former employees (defendants Thad Hales and Mike Bracikowski) and their new employer

26   (defendant Enerpac), as well as unnamed Doe defendants 1–30.  (Doc. No. 1.)  Plaintiff asserts

27   the following four claims against all defendants:  (1) misappropriation of trade secrets in violation

28   of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836; (2) intentional interference with

                                             1

prospective economic relations; (3) receipt of stolen property in violation of California Penal Code § 496(c); and (4) unfair and fraudulent business practices in violation of the California Unfair Competition Law ("UCL"), California Business and Professions Code §§ 17200, *et seq.* (*Id.* at 1.)  Plaintiff also asserts a claim of breach of contract and a claim of breach of the duty of loyalty against defendants Hales and Bracikowski.  (*Id.*)  Finally, plaintiff asserts that the court has supplemental jurisdiction over the "related state law claims" because they "arise from the same set of operative facts common to the federal claim . . . ."  (*Id.* at ¶ 9.)

In its complaint, plaintiff alleges the following.[1]  Plaintiff's trade secrets "include valuable non-public confidential information such as, *inter alia*," the "quoting and costing of projects enabl[ing] it to bid competitively to customers in its field of service" ("Bidding Information"), and "[i]nformation about future projects in the pipeline" that plaintiff "has identified as viable sources of future revenue" ("Project Information") (collectively, "Trade Secrets").  (*Id.* at ¶¶ 18– 19.)  "[O]ver the course of nearly 50 years," plaintiff "has expended substantial time, effort, and money in developing [its] Trade Secrets," which are "vital to maintaining its business and competitive advantages in the marketplace."  (*Id.* at ¶ 44.)  For instance, plaintiff "has gathered information about its customer's [sic] upcoming projects through years of servicing customers and earning their trust."  (*Id.* at ¶ 18.)  "[D]isclosure [of the Trade Secrets] to a competitor would cause a significant competitive injury."  (*Id.* at ¶ 20.)  To prevent this, plaintiff has "taken a series of commercially-reasonable steps, such as through secured networking, making information available on a need to know basis, password protections, the execution of confidentiality agreements, and other means to maintain the secrecy of [plaintiff's] Trade Secrets."  (*Id.* at ¶ 46.) Each of plaintiff's employees must "execute the Confidentiality Agreement," which provides in part that the employee "agrees that at all times during or subsequent to his or her employment, he or she will hold in trust, keep confidential and not disclose to any third party or make any use of [plaintiff's] Confidential Information . . . ."  (*Id.* at ¶ 22.)  Pursuant to the Confidentiality Agreement, employees "further agree[] not to cause the transmission, removal or transport of

---

[1]  In several instances, the allegations of plaintiff's complaint are advanced based upon information and belief.

Confidential Information . . . without prior written approval of the President of [plaintiff]."  (*Id.*) "Confidential Information" is defined in the Confidentiality Agreement as including "all information concerning databases, products . . . budgets, projections, prices lists . . . and customer and supplier identities, characteristics and agreements."  (*Id.* at ¶ 23.)  Further, plaintiff "derives independent economic value . . . from its Trade Secrets not being generally known" to the public. (*Id.* at ¶ 43.)

From January 2002 until his resignation on May 9, 2022, defendant Hales worked for plaintiff in several roles, including his final position as a "Technical Services Manager."  (*Id.* at ¶ 25.)  Defendant Bracikowski similarly worked for plaintiff from August 14, 2006 until his resignation in May 2022 in several roles, including as a "Technical Services Manager."  (*Id.* at ¶ 27.)  Technical Services Managers "are dedicated to interfacing between customers and [plaintiff's] service departments," and an "important job duty" is "generating leads and sales opportunities for new and existing customers . . . ."  (*Id.* at ¶ 24.)  Both defendant Hales and defendant Bracikowski signed the Confidentiality Agreement upon their hiring by plaintiff.  (*Id.* at ¶¶ 26, 28.)  "In their capacities as Technical Services Managers, both Hales and Bracikowski had direct access to [plaintiff's] confidential and proprietary information as well as its Trade Secrets," and they "routinely worked with [plaintiff's] customers on projects," "obtained leads for new projects," and "prepared bids and requests for proposals for potential projects."  (*Id.* at ¶ 29.)

"Unbeknownst to [plaintiff]," defendant Hales "was seeking a job with Hydratight, a competitor of [plaintiff]" owned by defendant Enerpac, by August 2021 at the latest.  (*Id.* at ¶ 30.) For "about 7 months" while still employed by plaintiff, "Hales informed [plaintiff's] customers that he was leaving for Hydratight" in an attempt "to divert their business to Hydratight."  (*Id.* at ¶ 32.)  "For example, . . . while Hales was employed by [plaintiff], he was the lead contact on a project located in South Carolina."  (*Id.*)  Defendant Hales "was tasked with trying to complete the job" by using a Hydratight product on the project."  (*Id.*)  Defendant Hales "submitted the scope of work, drawings, specifications, [and] technical details" to Hydratight to determine if the Hydratight product would suffice for the needs of the project.  (*Id.*)  "Meanwhile, he sabotaged that project," and, after resigning his position with plaintiff in order to work for defendant

Enerpac, he "diverted [the South Carolina] project and utilized the same Hydratight" product that plaintiff had proposed be used.  (*Id.*)

"On or about April 5, 2022," defendant Hales "requested from [plaintiff] a copy of the Confidentiality Agreement he signed"; defendant Bracikowski did likewise on or about April 21, 2022.  (*Id.* at ¶¶ 33–34.)  "In May 2022, both Hales and Bracikowski resigned their employment" with plaintiff.  (*Id.* at ¶ 35.)  Having resigned, defendants Hales and Bracikowski "were required to return all property belonging to" plaintiff, including "company computers and cell phones." (*Id.* at ¶ 36.)  Defendant Hales returned his company computers but "engaged in the theft of one of the hard drives," thereby seeking to "divert the information housed on [plaintiff's] hard drive to Enerpac."  (*Id.*)  Defendant Hales also "stole and deleted the contacts and the texts" from his company phone, which "had been reset to factory settings" when he returned it.  (*Id.*)  "Similarly, Bracikowski stole [plaintiff's] electronic files by copying them to an external hard drive" and "would not provide the access code to unlock" his company phone.  (*Id.* at ¶ 37.)  "Soon thereafter, both Hales and Bracikowski became employed by Enerpac under its Hydratight division."  (*Id.* at ¶ 38.)  In July 2022, "Hales called one of [plaintiff's] customers about a project on which [plaintiff] had an ongoing contract."  (*Id.* at ¶ 39.)  Plaintiff's "customer informed Hales that there was an existing contract between the customer and [plaintiff] and that Hales needed to stop trying to interfere with it."  (*Id.*)

According to plaintiff, "Hales and Bracikowski are improperly soliciting [plaintiff's] clients using [plaintiff's] confidential and proprietary information and Trade Secrets" and "Hales has exploited the information on the stolen hard drive to gain business on behalf on Enerpac." (*Id.* at ¶ 40.)  Plaintiff also alleges that "Enerpac targeted Hales and/or Bracikowski for hire, at least in part, because of their knowledge of and access to [plaintiff's] Trade Secrets, and for the purpose of acquiring [plaintiff's] Trade Secrets."  (*Id.* at ¶ 48.)  Defendant Enerpac "knew, or had reason to know, that [plaintiff's Trade Secrets] had been acquired through improper means, and without authorization."  (*Id.* at ¶ 50.)  Plaintiff "has informed Enerpac of the impropriety of Hales's and Bracikowski's . . . actions on several occasions, including directly to Enerpac and its in-house counsel."  (*Id.*)

1        On October 10, 2022, defendant Enerpac filed the pending motion to dismiss all four of

2 the claims brought against it on the grounds that plaintiff has not alleged sufficient facts in

3 support of its DTSA claim and that the remaining three state law claims are preempted by the

4 California Uniform Trade Secrets Act ("CUTSA").  (Doc. No. 10 at 3.)  On October 24, 2022,

5 plaintiff filed its opposition to the pending motion.  (Doc. No. 13.)  On November 3, 2022,

6 defendant Enerpac field its reply thereto.  (Doc. No. 14.)

7                                     **LEGAL STANDARD**

8        The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal

9 sufficiency of the complaint.  *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir.

10 1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of

11 sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901

12 F.2d 696, 699 (9th Cir. 1990).  A plaintiff is required to allege "enough facts to state a claim to

13 relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A

14 claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

15 the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v.*

16 *Iqbal*, 556 U.S. 662, 678 (2009).

17        In determining whether a complaint states a claim on which relief may be granted, the

18 court accepts as true the allegations in the complaint and construes the allegations in the light

19 most favorable to the plaintiff.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  However,

20 the court need not assume the truth of legal conclusions cast in the form of factual allegations.

21 *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).  While Rule 8(a) does not

22 require detailed factual allegations, "it demands more than an unadorned, the-defendant-

23 unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678.  A pleading is insufficient if it offers

24 mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."

25 *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements

26 of a cause of action, supported by mere conclusory statements, do not suffice.").  It is

27 inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the

28 /////

1  defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen.*

2  *Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

3       In ruling on a motion to dismiss under Rule 12(b)(6), the court is permitted to consider

4  material that is properly submitted as part of the complaint, documents that are not physically

5  attached to the complaint if their authenticity is not contested and the plaintiffs' complaint

6  necessarily relies on them, and matters of public record. *Lee v. City of Los Angeles*, 250 F.3d

7  668, 688–689 (9th Cir. 2001).

8                     **ANALYSIS**

9  **A.**     **Whether Plaintiff Sufficiently Alleged its DTSA Claim Against Defendant Enerpac**

10       "To state a claim for trade secret misappropriation under the DTSA . . . a plaintiff must

11  allege that:  (1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade

12  secret; and (3) the defendant's actions harmed the plaintiff." *Alta Devices, Inc. v. LG Elecs., Inc.*,

13  343 F. Supp. 3d 868, 877 (N.D. Cal. 2018); *see also InteliClear, LLC v. ETC Glob. Holdings,*

14  *Inc.,* 978 F.3d 653, 657–58 (9th Cir. 2020); 18 U.S.C. § 1839.  Under the DTSA, a "trade secret"

15  is:

16          financial, business, scientific, technical, economic, or engineering
   information . . . if (A) the owner thereof has taken reasonable
17          measures to keep such information secret; and (B) the information
   derives independent economic value, actual or potential, from not
18          being generally known to, and not being readily ascertainable
   through proper means by, another person who can obtain economic
19          value from the disclosure or use of the information.

20  *Advanced BioTech, LLC v. BioWorld USA, Inc.*, No. 19-cv-01215-NONE-SKO, 2020 WL

21  5797929, at *4 (E.D. Cal. Sept. 29, 2020) (quoting 18 U.S.C. § 1893(3)); *see also Attia v. Google*

22  *LLC*, 983 F.3d 420, 424 (9th Cir. 2020).  At the pleading stage, "the plaintiff must 'describe the

23  subject matter of the trade secret with sufficient particularity to separate it from matters of general

24  knowledge in the trade or of special persons who are skilled in the trade, and to permit the

25  defendant to ascertain at least the boundaries within which the secret lies.'" *Alta Devices*, 343 F.

26  Supp. 3d at 881 (quoting *Vendavo, Inc. v. Price f(x) AG*, No. 17-cv-06930-RS, 2018 WL

27  1456697, at *4 (N.D. Cal. Mar. 23, 2018)).

28  /////

1    The DTSA defines "misappropriation" as:

2        (1) the "acquisition of a trade secret of another by a person who
         knows or has reason to know that the trade secret was acquired by
3        improper means;" (2) the disclosure of a trade secret without the
         owner's consent; [or] (3) the use of a trade secret without the
4        owner's consent.

5    *Attia*, 983 F.3d at 424 (quoting 18 U.S.C. §§ 1839(5)(A), (5)(B)).  "Improper means" is defined

6    by the DTSA to include "theft, bribery, misrepresentation, [or] breach or inducement of a breach

7    of a duty to maintain secrecy . . . ."  18 U.S.C. § 1839(6)(A).

8        Below, the court will address whether plaintiff has alleged facts sufficient to satisfy the

9    elements of its DTSA claim with regard to its purported Trade Secrets, first as to its Project

10   Information ("[i]nformation about future projects in the pipeline" that plaintiff "has identified as

11   viable sources of future revenue"), and then as to its Bidding Information (the "quoting and

12   costing of projects enabl[ing] it to bid competitively to customers in its field of service").  (Doc.

13   No. 1 at ¶ 18.)

14       1.    Project Information

15            a.    *Ownership of Trade Secret*

16       With respect to the Project Information, plaintiff has sufficiently alleged ownership of a

17   trade secret.  "[C]onfidential customer-related information including customer lists and contact

18   information, pricing guidelines, historical purchasing information, and customers' business

19   needs/preferences" are "routinely given trade secret protection."  *Brocade Commc'ns Sys., Inc. v.*

20   *A10 Networks, Inc.*, 873 F. Supp. 2d 1192, 1214 (N.D. Cal. 2012) (analyzing a CUTSA

21   misappropriation claim).[2]  The allegation of plaintiff's complaint regarding "[i]nformation about

22   future projects in the pipeline" that plaintiff "has identified as viable sources of future revenue"

23   fits into this category.  (Doc. No. 1 at ¶¶ 18–19.)  In its complaint, plaintiff also alleges that it

24   restricted access to its Trade Secrets information on a need-to-know basis, used password

25   _____

26   [2]  Courts often analyze DTSA and CUTSA claims together "because the elements are
     substantially similar" under each statute.  *InteliClear, LLC v. ETC Glob. Holdings, Inc.,* 978 F.3d
27   653, 657 (9th Cir. 2020); *see, e.g., Beluca Ventures LLC v. Einride Aktiebolag*, __ F. Supp. 3d __,
     2023 WL 2456716, at *6–7 (N.D. Cal. 2023) (analyzing whether the plaintiff had sufficiently
28   alleged misappropriation under the DTSA and CUTSA simultaneously).

1   protections, and required confidentiality agreements to be signed by employees.  (*Id.* at ¶ 46.)

2   Thus, plaintiff has sufficiently alleged that it took reasonable measures to keep the Project

3   Information secret.  *See Advanced BioTech*, 2020 WL 5797929, at *5 (holding that the plaintiffs

4   have sufficiently alleged that they took reasonable measures by alleging that they used "private,

5   password-protected server locations . . . [and] limit[ed] employee access so that only those who

6   have a work-related reason for using [the plaintiff's trade secrets] may do so"); *Alta Devices*, 343

7   F. Supp. 3d at 880 (denying the defendant's motion to dismiss because "the presence of a [non-

8   disclosure] contract is an allegation that may support a finding of reasonable measures").  Lastly,

9   plaintiff alleges in its complaint that "disclosure to a competitor [of the Project Information]

10   would cause significant competitive injury" and that the information in question is "vital to

11   maintaining its business and competitive advantages in the marketplace."  (Doc. No. 1 at ¶¶ 20,

12   44.)  This is a sufficient allegation that the information derives value from being kept secret.  *See*

13   *Advanced BioTech*, 2020 WL 5797929 at *5 (finding that the plaintiffs had alleged that the trade

14   secrets derive value from not being generally known by alleging that plaintiff "operates in a

15   competitive marketplace where this information is presumably highly valuable to market

16   participants").

17         Plaintiff has also alleged the subject matter of the trade secret, "information about

18   upcoming projects in its domestic pipeline," with sufficient particularity.  (Doc. No. 1 at ¶ 46.)  It

19   does appear that the line between allegations of mere categories of protectable information, which

20   are not sufficiently particular, and the more detailed allegations which are, can be fairly

21   /////

22   /////

23   /////

24   /////

25   /////

26   /////

27   /////

28   /////

characterized as a thin one.[3]  While brief, plaintiff's description of the Project Information in its complaint provides more detail than the allegations of "Customer Network" and "customer information" found or suggested to be conclusory in other cases.  *See Genasys*, 638 F. Supp. 3d at 1151; *Cool Runnings*, 2021 WL 5331453 at *6 & n.4.  Instead, plaintiff specifies in its complaint that the trade secret at issue is "information about its customer's upcoming projects," "gathered . . . through years of servicing customers and earning their trust."  (Doc. No. 1 at ¶ 18.)  Plaintiff further specifies that the Project Information is limited more concretely to "projects that it has identified as viable sources of future revenue."  (*Id.*)  The undersigned concludes that these more specific allegations are sufficient to "permit the defendant to ascertain at least the boundaries within which the secret lies."  *Alta Devices*, 343 F. Supp. 3d at 881 (quoting *Vendavo*, 2018 WL 1456697, at *4); *see also id.* at 882 (quoting *Vendavo*, 2018 WL 1456697, at *4 n.3) (noting that "plaintiffs cannot be expected to disclose publicly in the complaint the very secrets they are seeking to protect").

           b.    *Misappropriation*

Having sufficiently alleged ownership of a trade secret in Project Information, plaintiff must also allege misappropriation of those trade secrets.

---

[3]  *Compare Vendavo*, 2018 WL 1456697, at *3–4 (finding that allegations of "customer lists and customer related information, pricing information," and "marketing plans and strategic business development initiatives" were insufficient because they were "categorical terms, more descriptive of the types of information that generally *may* qualify as protectable trade secrets than as any kind of listing of particular trade secrets"); *Genasys Inc. v. Vector Acoustics, LLC*, 638 F. Supp. 3d 1135, 1151 (S.D. Cal. 2022) (finding that the phrases "Customer Network" and "Pricing Information" were insufficiently particular); *Cool Runnings Int'l Inc v. Gonzalez*, No. 21-cv-00974-DAD-HBK, 2021 WL 5331453, at *6 & n.4 (E.D. Cal. Nov. 16, 2021) (suggesting that allegations of "customer, supplier and vendor information; [and] pricing structure and information" were not "stated with sufficient particularity"), *with TMX Funding, Inc. v. Impero Techs., Inc.*, No. 10-cv-00202-JF-PVT, 2010 WL 2509979, at *3 (N.D. Cal. June 17, 2010) (finding allegations of "Customer lists," "cost, pricing," "business methods and marketing plans, such as prospective customer and sales methods for attracting and retaining customers" to be sufficiently particular); *Advanced BioTech*, 2020 WL 5797929 at *4 (finding that the plaintiffs stated a claim by alleging trade secrets in "an extensive list of customers who use or have used its products" and information on customers' "activity data, product preferences, pricing information, business and marketing plans, and strategies"); *Upstrem, Inc. v. BHFO, Inc.*, No. 20-cv-02160-JLS-DEB, 2021 WL 2038324, at *4 (S.D. Cal. May 21, 2021) (finding the plaintiff's allegations regarding "customer lists" and "customer demand on different marketplaces" to be sufficiently particular).  *See also Albert's Organics, Inc. v. Holzman*, 445 F. Supp. 3d 463, 472–73 (N.D. Cal. 2020) (finding that "customer information" was sufficiently particular while other phrases such as "supplier information, pricing, financing, personnel files and records" were not).

In its reply, defendant Enerpac argues that plaintiff's entire DTSA claim should be dismissed because it "contains no specific information about what information was disclosed to whom." (Doc No. 14 at 4) (citing *My Daily Choice, Inc. v. Hunter*, No. 20-cv-00809-APG-DJA, 2020 WL 4369447, at *2 (D. Nev. July 30, 2020) (dismissing a misappropriation claim because the plaintiff "provides no information on what information is being disclosed, to whom, by whom, or for what purpose")). Defendant Enerpac further argues that plaintiff's allegations of misappropriation are "virtually identical" to those "found to be insufficient" by the district courts in *Flexpand, LLC v. CREAM, Inc.*, No. 19-cv-00878-SBA, 2020 WL 13504975 (N.D. Cal. Sept. 9, 2020) and *Veronica Foods Co. v. Ecklin*, No. 16-cv-07223-JCS, 2017 WL 2806706 (N.D. Cal. June 29, 2017). (*Id.*)

The cases cited by defendant Enerpac are not binding authority and are distinguishable from this case in light of the allegations of plaintiff's complaint. Here, plaintiff has alleged that defendants Hales and Bracikowski worked for plaintiff for decades, had "direct access" to plaintiff's Trade Secrets, spent seven months attempting to divert plaintiff's customers to defendant Enerpac while employed by plaintiff (in the case of defendant Hales), requested copies of the Confidentiality Agreement in April 2022, and resigned in May 2022, whereupon they were hired by, and disclosed the Trade Secrets to, defendant Enerpac. (Doc. No. 1 at ¶¶ 25–29, 32–33, 35, 47.) Furthermore, plaintiff alleges that defendant Hales and Bracikowski stole physical hardware and electronic files from their company devices (*id.* at ¶¶ 36–37), though plaintiff concedes in its opposition that it "remains unknown" whether the information on the stolen devices contains trade secrets (Doc. No. 13 at 8). Plaintiff also alleges that defendant Hales contacted one of plaintiff's customers after resigning in an attempt to acquire that customer's business. (Doc. No. 1 at ¶ 39.) Finally, plaintiff alleges upon information and belief that defendant Enerpac targeted defendants Hales and Bracikowski for hire because of their access to plaintiff's trade secrets, and that defendant Enerpac knew, or had reason to know, that those trade secrets were improperly acquired because plaintiff had directly informed defendant that this was the case. (*Id.* at ¶¶ 48, 50.) These allegations are not at all similar to the "general and conclusory allegations that are undifferentiated by defendant" which led the court in *My Daily Choice*, a case

relied upon by defendant Enerpac, to summarily dismiss the complaint before it.  *See* 2020 WL 4369447, at \*2.  Rather, plaintiff here has alleged what information is being disclosed, by whom, to whom, and for what purpose.  Indeed, "misappropriation occurs if information from a customer database is used to *solicit* customers."  *MAI Sys. Corp. v. Peak Comput., Inc.*, 991 F.2d 511, 521 (9th Cir. 1993). That is what plaintiff has alleged is occurring here.  Moreover, the allegations of plaintiff's complaint permit the reasonable inference to be drawn that defendant Enerpac acquired plaintiff's Project Information and knew or had reason to know that the information was acquired by defendants Hales and Bracikowski via improper means.

Nor are the allegations of the complaint before this court like the allegations before the district court in *Flexpand* or *Veronica Foods*.  In *Flexpand*, the plaintiff had alleged that it was "*informed and believes* that [the defendants] misappropriated the Trade Secrets by accessing [the plaintiff's] computer system without authorization."  2020 WL 13504975, at \*7.  There, the court found this "barebones accusation" insufficient because it relied exclusively on information and belief.  *Id.*  By contrast, only one of the allegations discussed above relies on information and belief, and that belief is based on facts supporting a plausible inference of misconduct.  *See Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) ("The *Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible.") (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)); *see also Gordon Grado M.D., Inc. v. Phx. Cancer and Blood Disorder Treatment Inst. PLLC*, 603 F. Supp. 3d 799, 811 (D. Ariz. 2022) (finding that the plaintiff's allegations that "upon information and belief" the plaintiff's former employees "access[ed] proprietary systems and download[ed]" trade secrets "at [the defendant's] direction" were "sufficient at the pleadings stage, especially where other factual allegations support an inference of direction").  The decision in *Veronica Foods* is similarly inapposite.  In that case, the district court simply held that the plaintiff's "everything-but-the-kitchen-sink assertion that Defendants 'have made improper and unauthorized use of [the plaintiff's] Customer List, Supplier List, and Confidential Business Information' to solicit customers" was "largely

conclusory." *Veronica Foods*, 2017 WL 2806706, at *14.  However, that court also specifically noted that the plaintiff's allegations were insufficient "[a]bsent some basis to conclude that" the plaintiff's former employee "had such knowledge of the particular stores that Defendants solicited . . . such as allegations that [the plaintiff's former employee] had worked with those particular stores while" working for the plaintiff.  *Id.*  Here, plaintiff has alleged that defendant Hales "intentionally sabotaged at least one job on which he worked for [plaintiff] so that he could reclaim the same job while working for Enerpac," and that defendant Hales spent seven months while employed by plaintiff trying to convince plaintiff's customers to switch their business to defendant Enerpac.  (Doc. No. 1 at ¶ 32.)  In addition, the district court in *Veronica Foods* noted that "the mere fact that those retailers were [the plaintiff's] customers might itself be a trade secret," except that the plaintiff "has publicized its relationship with many of its customers." 2017 WL 2806706, at *14.  By contrast, there is no indication from the allegations of its complaint that plaintiff has publicized its Project Information.  Moreover, here, plaintiff has alleged that defendants Hales and Bracikowski stole plaintiff's property and digital files immediately before resigning to go to work for plaintiff's competitor (Doc. No. 1 at ¶¶ 36–37)— such alleged conduct is not merely behavior "to be expected from a new [competitor] entering the market." *Veronica Foods*, 2017 WL 2806706, at *14.

Accordingly, defendant Enerpac's motion to dismiss plaintiff's trade secret misappropriation claim brought under the DTSA, to the extent that claim is premised on plaintiff's Project Information, will be denied.

2.   Bidding Information

a.   *Ownership of Trade Secret*

The "valuable confidential and proprietary information [plaintiff] has developed and maintained over many years . . . relating to its costs and pricing in preparing bids for projects" is the kind of information protectable as a trade secret.  (Doc. No. 1 at ¶ 45); *see also Pyro-Comm Sys. Inc. v. W. Coast Fire and Integration Inc.*, No. 14-cv-02028-JLS-RNB, 2015 WL 12765143, at *1 (C.D. Cal. Apr. 2, 2015) (finding that the plaintiff had alleged ownership of a trade secret under CUTSA in "software [that] determines appropriate pricing to bid for a project, taking into

account material costs and margins, special factory pricing, and other information").  Moreover, the allegations of plaintiff's complaint regarding reasonable measures to ensure secrecy apply equally to the Bidding Information as they do to the Project Information.  (Doc. No. 1 at ¶ 46.)  For the same reasons discussed above, plaintiff has therefore alleged that it took reasonable measures to keep secret the Bidding Information.  Plaintiff has also sufficiently alleged that the Bidding Information derives independent value from being kept secret.  Specifically, plaintiff has alleged that the secrets in question are "vital to maintaining its business and competitive advantages in the marketplace," and that disclosure of those secrets would "aid [defendant] Enerpac in unfairly competing" with plaintiff.  (*Id.* at ¶¶ 44, 49).  Moreover, plaintiff alleges that defendants Hales and Bracikowski "are improperly soliciting [plaintiff's] clients using" the Trade Secrets.  (*Id.* at ¶ 40); *see also Pyro-Comm*, 2015 WL 12785143, at *5 (finding that the plaintiff stated a claim for misappropriation of trade secrets under CUTSA by alleging that the defendant "used [the plaintiff's] estimating software . . . to plan [the defendant's] bid on the Discovery Science Center Project and undercut [the plaintiff's] bid").

In its motion to dismiss and its reply, defendant Enerpac argues that as a matter of law the Bidding Information cannot be a trade secret because plaintiff voluntarily disclosed "'the scope of work, drawings, specifications, technical details, and the plan' regarding plaintiff's South Carolina project allegedly diverted to [defendant] Enerpac."  (Doc. No. 14 at 3 (quoting Doc. No. 1 at ¶ 32).)  Defendant Enerpac also argues that plaintiff's "scope of work" was readily ascertainable through proper means.  (Doc. No. 10 at 5.)  The court finds this argument unpersuasive.

"Even if some of the individual parts or prices in the [trade secret] are publicly known, it is the secrecy of the claimed trade secret as a whole that is determinative."  *Cool Runnings*, 2021 WL 5331453, at *7 (citing *U.S. v. Nosal*, 844 F.3d 1024, 1042 (9th Cir. 2016)).  Plaintiff is alleging a trade secret in the entire "quoting and costing of its projects," which "enables it to bid competitively to customers in its field of service."  (Doc. No. 1 at ¶ 18.)  As plaintiff explains in its opposition to the pending motion, the trade secret at issue "consist[s] of *all* of [plaintiff's] quoting and costing records," not only those related to one South Carolina project.  (Doc. No. 13

at 4.)  While defendant Enerpac could perhaps reverse engineer plaintiff's method of quoting bids from the information submitted for the South Carolina project, "[t]he theoretical possibility of reconstructing the secret from published materials containing scattered references to portions of the information . . . will not preclude relief against the wrongful conduct."  *Nosal*, 844 F.3d at 1042 (quoting Restatement (Third) of Unfair Competition § 39 cmt. f (Am. L. Inst. 1995)).  The allegations of plaintiff's complaint, when viewed as a whole, are sufficient to provide for the reasonable inference to be drawn that plaintiff took reasonable measures to keep secret the Trade Secrets, including the Bidding Information.  Moreover, to the extent defendant Enerpac contends that certain parts of the Bidding Information were voluntarily disclosed to it, that factual contention does not preclude plaintiff's complaint from surviving a motion to dismiss.  Whether a plaintiff has taken reasonable measures "is 'ordinarily a question of fact for the jury' and 'only in an extreme case' may it be resolved as a matter of law."  *Advanced BioTech*, 2020 WL 5797929, at *5 (quoting *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 725 (7th Cir. 2003)).

Although perhaps a closer question, the court also finds that plaintiff has alleged ownership of the Bidding Information with sufficient particularity.  Notably, plaintiff does not allege that the Bidding Information is merely "pricing information" or "pricing data" as was found to be insufficiently specific by the district courts in *Vendavo*, 2018 WL 1456697, at *3, and *Agile Sourcing Partners, Inc. v. Dempsey*, No. 21-cv-00773-JGB-SP, 2021 WL 4860693, at *7–8 (C.D. Cal. July 15, 2021).  Rather, plaintiff alleges in the complaint slightly more detail, specifically that the trade secret is the "quoting and costing of its projects," which plaintiff "has invested substantial resources in developing" and which "enables it to bid competitively to customers in its field of service."  (Doc. No. 1 at ¶ 18.)  Thus, plaintiff's allegations are more similar to those in *Bitglass, Inc. v. Netskope, Inc.*, No. 20-cv-05216, 2020 WL 11563099, at *4 (N.D. Cal. Dec. 21, 2020), in which the court found the plaintiff's allegations sufficiently particular in part because it was "not a case . . . where a plaintiff has merely alleged in conclusory terms that an ex-employee now working for a competitor had access to a whole panoply of company information and can be inferred to be using trade secrets in his or her new position."

1    Rather, in this case plaintiff "has alleged [that defendants Hales and Bracikowski] engaged in a

2    specific act of downloading company files immediately after [their] termination" and then

3    delivered the stolen information to defendant Enerpac. *Bitglass*, 2020 WL 1156099, at *4. Such

4    allegations are unlike those in *Vendavo*, where "the lack of specificity [was] exacerbated by the

5    fact" that "the complaint [did not] sufficiently delineate timelines of the alleged acts of

6    misappropriation and use of purported trade secrets." 2018 WL 1456697, at *4. Here, as in

7    *Bitglass*, "the appropriate mechanism for obtaining greater specificity as to what trade secrets are

8    claimed" is reliance on "the discovery process as may be warranted." 2020 WL 11563099, at *5.[4]

9           In short, while not extensive, plaintiff's allegations are more detailed than those in cases

10   such as *Vendavo* or *Agile Sourcing*, and the court finds they are sufficiently particular to satisfy

11   the first element of plaintiff's DTSA claim—ownership of a trade secret in the Bidding

12   Information. *Cf. Genentech, Inc. v. JHL Biotech, Inc.*, No. 18-cv-06582-WHA, 2019 WL

13   1045911, at *17 (N.D. Cal. Mar. 5, 2019) ("A trade secret identification should be 'liberally

14   construed, and reasonable doubts about its sufficiency [should be] resolved in favor of allowing

15   discovery to go forward.'") (quoting *Brescia v. Angelin*, 172 Cal. App. 4th 133, 149 (2009)).

16          b.      *Misappropriation*

17          All of plaintiff's allegations regarding the acquisition of trade secrets by improper means,

18   along with the allegations regarding defendant Enerpac's actual or constructive knowledge of this

19   impropriety, apply equally to both the Bidding Information and the Project Information. (*See,

20   e.g.*, Doc. No. 1 at ¶¶ 25–29, 33, 35–39, 47, 48, 50.) Consequently, for the same reasons that the

21   court finds plaintiff's allegations of misappropriation with respect to the Project Information to be

22   sufficient, it likewise finds that plaintiff has sufficiently alleged misappropriation with respect to

23   the Bidding Information.

24   /////

25

26   [4] For instance, plaintiff has agreed it will provide further details regarding the trade secrets "once
     a protective order is in place." (Doc. No. 13 at 3). Indeed, after the pending motion was taken
27   under submission, the court approved the parties' stipulated protective order in this case. (Doc.
     No. 22.) Of course, promises to provide further details in the future have no impact on whether
28   plaintiff has met its pleading burden in the present, which the court finds it has done.

                                                      15

Accordingly, defendant Enerpac's motion to dismiss plaintiff's trade secrets misappropriation claim brought under the DTSA, to the extent that claim is premised on plaintiff's Bidding Information, will also be denied.[5]

**B.      Plaintiff's State Law Claims Brought Against Defendant Enerpac (Claims 2, 5, 6)**

In its motion to dismiss and its reply, defendant Enerpac argues that plaintiff's three state law claims brought against it (intentional interference with prospective economic advantage, violation of California Penal Code § 496(c), and violation of the UCL) are preempted by CUTSA and should be dismissed on that basis. (Doc. Nos. 10 at 6–7; 14 at 5–6.) CUTSA's definitions of "trade secret" and "misappropriation" are "substantially similar" to the DTSA definitions, and courts often "analyze plaintiff's state and federal trade secret claims jointly." *Cool Runnings*, 2021 WL 5331453, at *5. Despite this, plaintiff has chosen not to plead a CUTSA claim. (Doc. No. 13 at 5.) Nevertheless, CUTSA preemption of other state law claims applies under California law even when the plaintiff "has studiously avoided assertion of any trade secret claims." *Total Recall Techs. v. Luckey*, No. 15-cv-02281-WHA, 2016 WL 199796, at *7 (N.D. Cal. Jan. 16, 2016).

"CUTSA preempts [certain] claim[s] based on the 'same nucleus of facts as the misappropriation of trade secrets claim.'" *Emergy Inc. v. The Better Meat Co.*, No. 21-cv-02417-KJM-CKD, 2022 WL 7101973, at *8 (E.D. Cal. Oct. 12, 2022) (quoting *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th. 939, 955 (2009)); *see also* Cal. Civ. Code § 3426.7(b) (superseding non-contractual civil remedies that are based upon misappropriation of trade secrets). Preemption by CUTSA applies to claims of intentional interference with prospective economic relations. *CTI III, LLC v. Devine*, No. 21-cv-02184-JAM-DB, 2022 WL 1693508, at *3 (E.D. Cal. May 26, 2022); *Ikon Off. Sols., Inc. v. Rezente*, No. 10-cv-01704-WBS-KJM, 2010 WL 5129293, at *4 (E.D. Cal. Dec. 9, 2010). Civil claims of receipt of stolen property arising under California Penal Code § 496(c) are similarly preempted

---

[5]  Obviously, in denying defendant Enerpac's motion to dismiss plaintiff's DTSA claim the court expresses no view as to the merits of that claim, but rather concludes only that plaintiff's allegations in support of the claim are sufficient to survive a motion to dismiss.

by CUTSA.  *ATS Prods., Inc. v. Champion Fiberglass, Inc.*, No. 13-cv-02403-SI, 2015 WL

224815, at *2 (N.D. Cal. Jan. 15, 2015).  Finally, CUTSA also "displaces claims for unfair

competition based on the same nucleus of facts as a trade secrets claim."  *Coast Hematology-*

*Oncology Assocs. Med. Grp., Inc. v. Long Beach Mem'l Ctr.*, 58 Cal. App. 5th 748, 769 (2020)

(citing *K.C. Multimedia*, 171 Cal. App. 4th at 958).  Therefore, to the extent plaintiff's state law

claims are based on the same nucleus of facts as plaintiff's misappropriation of trade secrets

claim, those state law claims are preempted by CUTSA.

In its complaint, plaintiff incorporates and re-alleges all of its allegations advanced in

support of each of its six claims, without delineating any separate sets of facts that purportedly

apply to some claims and not others.  Defendant argues that plaintiff's complaint "largely

contains trade secret allegations," which necessarily means that plaintiff's three state law claims

brought against defendant Enerpac are preempted by CUTSA.  (Doc. No. 14 at 5.)  Indeed,

defendant Enerpac points out that plaintiff's opposition to the pending motion to dismiss begins:

"This dispute arises out of [plaintiff's] two former employees wrongfully taking and using

[plaintiff's] trade secrets and other confidential and proprietary information with [defendant

Enerpac] . . . ."  (*Id.* (quoting Doc. No. 13 at 2).)  Defendant Enerpac argues that the court

"should take plaintiff at its word and hold that CUTSA preempts the California claims resting on

this nucleus of fact."  (*Id.*)

Plaintiff argues in its opposition that the state law claims "make[] no mention of trade

secrets, [and are] not dependent upon any information being a trade secret."  (Doc. No. 13 at 8.)

However, plaintiff does not discuss the decisions by the "vast majority of courts that have

addressed [the] issue" and held that CUTSA also preempts "claims based on the misappropriation

of information that does not satisfy the definition of trade secret under CUTSA . . . ."  *Loop AI*

*Labs Inc v. Gatti*, No. 15-cv-00798-HSG, 2015 WL 5158461, at *3 (N.D. Cal. Sept. 2, 2015); *see*

*also Rescue 1 Fin., LLC v. Complete Debt Relief, LLC*, No. 23-cv-00982, 2023 WL 6373884, at

*7 (C.D. Cal. Aug. 7, 2023) ("[CUTSA's] preemptive sweep is broad—it supersedes all claims

premised on the wrongful taking and use of confidential and proprietary information, even if that

information does not meet the statutory definition of a trade secret.").

17

1    Nonetheless, the court need not address whether and to what extent plaintiff's claims arise

2    out of the same nucleus of facts as plaintiff's misappropriation claim, because plaintiff has

3    conceded that they do.  In its complaint, plaintiff has specifically alleged that "the state law

4    claims arise from the same set of operative facts common to the federal claim . . . ."  (Doc. No. 1

5    at ¶ 9.)[6]  Accordingly, the court will grant defendant Enerpac's motion to dismiss plaintiff's state

6    law claims of intentional interference with prospective economic advantage, violation of

7    California Penal Code § 496(c), and violation of the UCL.  The only remaining question then is

8    whether plaintiff should be granted leave to amend as to those state law claims.

9    **C.      Leave to Amend**

10   Leave to amend should be granted "freely" when justice so requires.  Fed. R. Civ.

11   P. 15(a).  The Ninth Circuit maintains a policy of "extreme liberality generally in favoring

12   amendments to pleadings."  *Rosenberg Bros. & Co. v. Arnold*, 283 F.2d 406, 406 (9th Cir. 1960).

13   Reasons "such as undue delay, bad faith or dilatory motive . . .  repeated failure to cure

14   deficiencies . . . undue prejudice to the opposing party . . . [or] futility" may support denial of

15   leave to amend.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  A district court "should grant leave

16   to amend even if no request to amend the pleading was made, unless it determines that the

17   pleading could not possibly be cured by the allegation of other facts."  *Cook, Perkiss and Liehe,*

18   *Inc. v. N. Cal. Collection Servs.*, 911 F.2d 242, 247 (9th Cir. 1990).

19   Plaintiff has not requested leave to amend should the pending motion to dismiss be

20   granted.  However, it is not unimaginable that plaintiff could allege additional or different facts in

21   support of its state law claims.  Plaintiff will therefore be granted leave to amend.  However,

22   plaintiff should only amend its complaint if it has a good faith basis to do so, keeping in mind the

23   interplay between supplemental jurisdiction and CUTSA preemption, as well as CUTSA's

24   /////

25   /////

26   /////

27

28

---

[6]  Plaintiff makes this allegation in support of the court's exercise of supplemental jurisdiction over the state law claims.  (Doc. No. 1 at ¶ 9.)

preemption of claims arising from confidential material that does not qualify as a trade secret.[7]

**CONCLUSION**

For the reasons explained above,

1.    Defendant's motion to dismiss (Doc. No. 10) is granted in part and denied in part as follows:

    a.    Plaintiff's claims of intentional interference with prospective economic advantage, unfair competition in violation of California Business and Professions Code §§ 17200 *et seq.*, and violation of California Penal Code § 496(c) are dismissed with leave to amend; and

    b.    Defendant's motion to dismiss plaintiff's claim of trade secret misappropriation in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836, is denied;

2.    Within twenty-one (21) days from the date of entry of this order, plaintiff shall file either a first amended complaint, or a notice of its intent not to file a first amended complaint and to proceed only on the claims found to be cognizable in this order.

IT IS SO ORDERED.

Dated:  __October 27, 2023__                                   _____

DALE A. DROZD
UNITED STATES DISTRICT JUDGE

---

[7]  The court need not and does not consider whether it could have supplemental jurisdiction over state law claims that arise out of the same nucleus of facts as a misappropriation of trade secrets claim without those claims then being preempted by CUTSA.  However, if plaintiff elects to file an amended complaint alleging that its state law claims arise from the same nucleus of operative facts with respect to supplemental jurisdiction but not with respect to CUTSA preemption, then plaintiff must be prepared to address this question of law.

19