1
2
3
4
5
6
7

8                      UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    TRI TOOL, INC.,                          No. 2:22-cv-01515-DAD-CSK

12              Plaintiff,

13       v.                                     ORDER GRANTING DEFENDANT
                                                ENERPAC TOOL GROUP CORP.'S MOTION
14    THAD HALES, et al.,                       TO DISMISS CERTAIN OF PLAINTIFF'S
                                                CLAIMS
15              Defendants.
                                                (Doc. No. 54)
16

17          This matter is before the court on the motion to dismiss certain of plaintiff's claims filed

18    by defendant Enerpac Tool Group Corp. ("Enerpac") on August 16, 2024.  (Doc. No. 54.)  On

19    September 16, 2024, the pending motion was taken under submission on the papers.  (Doc.

20    No. 64.)  For the reasons explained below, defendant Enerpac's motion to dismiss will be granted

21    without leave to amend.

22                                   **BACKGROUND**

23          On November 9, 2023, plaintiff Tri Tool, Inc. ("Tri Tool"), a company that designs high

24    performance machine tools, filed its operative first amended complaint ("FAC") against two of its

25    former employees (defendants Thad Hales and Mike Bracikowski) and their new employer

26    (defendant Enerpac), as well as unnamed Doe defendants 1–30.  (Doc. No. 29.)

27    /////

28    /////

                                              1

In its FAC, plaintiff alleges the following.[1]  Plaintiff's trade secrets "include valuable non-public confidential information such as" the quoting and costing of projects enabling it to bid competitively to customers in its field of service, and information about future projects in the pipeline that plaintiff "has identified as viable sources of future revenue" (collectively, "the Trade Secrets").  (*Id.* at ¶¶ 18–19.)  Over the course of nearly 50 years, plaintiff has expended substantial time, effort, and money in developing its Trade Secrets, which are vital to maintaining its business and competitive advantages in the marketplace.  (*Id.* at ¶ 45.)  For instance, plaintiff has gathered information about its customers' upcoming projects through years of servicing customers and earning their trust.  (*Id.* at ¶ 18.)  Disclosure of the Trade Secrets to a competitor would cause a significant competitive injury.  (*Id.* at ¶ 20.)  To prevent this, plaintiff has taken a series of commercially reasonable steps, such as through secured networking, making information available on a need-to-know basis, password protections, the execution of confidentiality agreements, and other means to maintain the secrecy of its Trade Secrets.  (*Id.* at ¶ 47.)  Each of plaintiff's employees must execute the "Confidentiality Agreement," which provides in part that the employee "agrees that at all times during or subsequent to his or her employment, he or she will hold in trust, keep confidential and not disclose to any third party or make any use of [plaintiff's] Confidential Information . . . ."  (*Id.* at ¶¶ 21, 22.)  Pursuant to the Confidentiality Agreement, employees "further agree[] not to cause the transmission, removal or transport of Confidential Information . . . without prior written approval of the President of [plaintiff]."  (*Id.* at ¶ 22.)  "Confidential Information" is defined in the Confidentiality Agreement as including "all information concerning databases, products . . . budgets, projections, prices lists . . . and customer and supplier identities, characteristics and agreements."  (*Id.* at ¶ 23.)  Further, plaintiff "derives independent economic value . . . from its Trade Secrets not being generally known" to the public.  (*Id.* at ¶ 44.)

From January 2002 until his resignation on May 9, 2022, defendant Hales worked for plaintiff in several roles, including in his final position with plaintiff as a "Technical Services

---

[1]  In several instances, the allegations of plaintiff's complaint are advanced based upon information and belief.

Manager." (*Id.* at ¶ 25.)  Defendant Bracikowski similarly worked for plaintiff from August 14, 2006 until his resignation in May 2022 in several roles, including as a "Technical Services Manager." (*Id.* at ¶ 27.)  Technical Services Managers are dedicated to interfacing between customers and plaintiff's service departments, and an important job duty was generating leads and sales opportunities for new and existing customers.  (*Id.* at ¶ 24.)  Both defendant Hales and defendant Bracikowski signed the Confidentiality Agreement upon their hiring by plaintiff.  (*Id.* at ¶¶ 26, 28.)  In their capacities as Technical Services Managers, both Hales and Bracikowski had direct access to plaintiff's confidential and proprietary information as well as its Trade Secrets, and they routinely worked with plaintiff's customers on projects, obtained leads for new projects, and prepared bids and requests for proposals for potential projects.  (*Id.* at ¶ 29.)

Unbeknownst to plaintiff, defendant Hales was seeking a job with Hydratight, a competitor of plaintiff's owned by defendant Enerpac, by August 2021 at the latest.  (*Id.* at ¶ 30.)  For approximately 7 months while still employed by plaintiff, Hales informed plaintiff's customers that he was leaving for Hydratight in an attempt to divert their business to Hydratight.  (*Id.* at ¶ 32.)  For example, while Hales was employed by plaintiff, he was the lead contact on a project located in South Carolina.  (*Id.*)  Defendant Hales was tasked with trying to complete the job by using a Hydratight product on the project.  (*Id.*)  Defendant Hales submitted the scope of work, drawings, specifications, and technical details to Hydratight to determine if the Hydratight product would suffice for the needs of the project.  (*Id.*)  Meanwhile, "he sabotaged that project" by falsely representing to the South Carolina customer that plaintiff's proposed solution using the Hydratight product would not work.  (*Id.* at ¶¶ 32, 62.)  After resigning his position with plaintiff, defendant Hales diverted the South Carolina project to defendant Enerpac, "using the resources and plan developed at Tri Tool," as well as the same Hydratight product that plaintiff had proposed be used on the project.  (*Id.* at ¶¶ 32, 62.)

On or about April 5, 2022, defendant Hales requested from plaintiff a copy of the Confidentiality Agreement he signed; defendant Bracikowski did likewise on or about April 21, 2022.  (*Id.* at ¶¶ 33, 34.)  In May 2022, both Hales and Bracikowski resigned their employment with plaintiff.  (*Id.* at ¶ 35.)  Having resigned, defendants Hales and Bracikowski were required to

return all property belonging to plaintiff, including company computers and cell phones.  (*Id.* at ¶ 36.)  Defendant Hales returned his company computers but engaged in the theft of one of the hard drives, thereby seeking to divert the information housed on plaintiff's hard drive to Enerpac.  (*Id.* at ¶¶ 36, 37.)  Defendant Hales also stole and deleted the contacts and the texts from his company phone, which had been reset to factory settings when he returned it to plaintiff.  (*Id.* at ¶ 37.)  Similarly, Bracikowski stole plaintiff's electronic files by copying them to an external hard drive and would not provide plaintiff the access code to unlock his company phone.  (*Id.* at ¶ 38.)  Soon thereafter, both Hales and Bracikowski became employed by Enerpac under its Hydratight division.  (*Id.* at ¶ 39.)  In July 2022, Hales called one of plaintiff's customers about a project on which plaintiff had an ongoing contract.  (*Id.* at ¶ 40.)  Plaintiff's customer informed Hales that there was an existing contract between the customer and plaintiff and that Hales needed to stop trying to interfere with it.  (*Id.*)

According to plaintiff, Hales and Bracikowski are improperly soliciting plaintiff's clients using its confidential and proprietary information and Trade Secrets, and Hales has exploited the information on the stolen hard drive to gain business on behalf on Enerpac.  (*Id.* at ¶ 41.)  Plaintiff also alleges that Enerpac targeted Hales and/or Bracikowski for hire, at least in part, because of their knowledge of and access to plaintiff's Trade Secrets, and for the purpose of acquiring those Trade Secrets.  (*Id.* at ¶ 49.)  Defendant Enerpac knew, or had reason to know, that plaintiff's Trade Secrets had been acquired through improper means, and without authorization.  (*Id.* at ¶ 51.)  Plaintiff has informed Enerpac of the impropriety of Hales's and Bracikowski's actions on several occasions, including communicating directly to Enerpac and its in-house counsel.  (*Id.* at ¶ 51.)

Plaintiff asserts the following five claims in its FAC:  (1) misappropriation of trade secrets in violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, against all defendants; (2) intentional interference with prospective economic relations, against all defendants; (3) breach of contract, against defendants Hales and Bracikowski; (4) breach of the duty of loyalty, against defendants Hales and Bracikowski; (5) unfair and fraudulent business practices in violation of the
/////

1    California Unfair Competition Law ("UCL"), California Business and Professions Code

2    §§ 17200, *et seq.*, against all defendants.  (*Id.* at 1.)

3         On October 3, 2023, the court granted in part and denied in part defendant Enerpac's

4    motion to dismiss plaintiff's original complaint.  (Doc. No. 28.)  The court concluded therein that

5    plaintiff had sufficiently alleged its DTSA claim but that plaintiff's claims for intentional

6    interference with prospective economic advantage, violation of the UCL, and violation of

7    California Penal Code § 496(c) were preempted by California's Uniform Trade Secrets Act

8    ("CUTSA").  (*See id.* at 6–18.)  In finding plaintiff's state law claims to be preempted by

9    CUTSA, the court relied on plaintiff's allegation in its complaint that "the state law claims arise

10    from the same set of operative facts common to the federal [trade secrets misappropriation]

11    claim."  (Doc. No. 1 at ¶ 9.)  Plaintiff no longer makes this concession in its FAC, instead

12    alleging that the state law claims arise from the same set of operative facts common to the federal

13    claim only "[f]or the purposes of pendent supplemental jurisdiction" and not for the purposes of

14    CUTSA preemption.  (Doc. No. 29 at ¶ 9.)

15         On August 16, 2024, defendant Enerpac filed the pending motion to dismiss plaintiff's

16    claims asserted in its FAC for intentional interference with prospective economic relations and for

17    violation of the UCL, arguing that these claims brought again by plaintiff remain preempted by

18    CUTSA.  (Doc. No. 54.)  On August 29, 2024, plaintiff filed its opposition to the pending motion.

19    (Doc. No. 57.)  On September 9, 2024, defendant Enerpac field its reply thereto.  (Doc. No. 58.)

20                                        **LEGAL STANDARD**

21         The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal

22    sufficiency of the complaint.  *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir.

23    1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of

24    sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901

25    F.2d 696, 699 (9th Cir. 1990).  A plaintiff is required to allege "enough facts to state a claim to

26    relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A

27    claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

28    /////

                                                    5

1    the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.*
2    *Iqbal*, 556 U.S. 662, 678 (2009).

3            In determining whether a complaint states a claim on which relief may be granted, the
4    court accepts as true the allegations in the complaint and construes the allegations in the light
5    most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). However,
6    the court need not assume the truth of legal conclusions cast in the form of factual allegations.
7    *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not
8    require detailed factual allegations, "it demands more than an unadorned, the-defendant-
9    unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers
10   mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."
11   *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements
12   of a cause of action, supported by mere conclusory statements, do not suffice."). It is
13   inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the
14   defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen.*
15   *Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

16           In ruling on a motion to dismiss under Rule 12(b)(6), the court is permitted to consider
17   material that is properly submitted as part of the complaint, documents that are not physically
18   attached to the complaint if their authenticity is not contested and the plaintiffs' complaint
19   necessarily relies on them, and matters of public record. *Lee v. City of Los Angeles*, 250 F.3d.
20   668, 688–689 (9th Cir. 2001).

21                                          **ANALYSIS**

22   **A.    Intentional Interference with Prospective Economic Relations Claim**

23           In its motion to dismiss, defendant Enerpac argues that plaintiff's claim for intentional
24   interference with prospective economic relations ("the interference claim") is preempted by
25   CUTSA and should be dismissed on that basis. (Doc. No. 54 at 12–14.) Defendant Enerpac
26   points out that plaintiff has included virtually no new factual allegations in its FAC. (*Id.* at 13.)
27   In opposition, plaintiff argues that its interference claim is predicated on different facts than the
28   facts underlying its DTSA claim. (Doc. No. 57 at 4–5.) Specifically, plaintiff argues that its

                                                  6

1    DTSA claim is predicated on defendants Hales and Bracikowski "taking [plaintiff's] (1) 'costs

2    and pricing' information and (2) 'information about upcoming projects in its domestic pipeline of

3    potential projects' and later disclosing them to or using them at Enerpac," while its interference

4    claim is predicated on defendant Hales "working on a specific project in South Carolina,"

5    misrepresenting to plaintiff's customer that a certain Hydratight product would not work for the

6    project, and then using that same Hydratight product on the South Carolina project after being

7    employed by defendant Enerpac.  (*Id.* at 4–5.)  In reply, defendant Enerpac reiterates its argument

8    that plaintiff has not included any new factual allegations in its FAC but instead merely

9    "redistribute[d] the same set of facts alleged previously, to create an illusory separation" between

10    plaintiff's DTSA claim and its interference claim.  (Doc. No. 58 at 5.)  Defendant Enerpac argues

11    that plaintiff's allegations regarding the South Carolina project are simply a specific instance of

12    the same alleged conduct underlying its DTSA claim—namely, the alleged use of pricing

13    information and information regarding plaintiff's upcoming projects in order to divert plaintiff's

14    customers.  (*Id.* at 4–5.)

15        "CUTSA preempts [certain] claim[s] based on the 'same nucleus of facts as the

16    misappropriation of trade secrets claim.'"  *Emergy Inc. v. The Better Meat Co.*, No. 2:21-cv-

17    02417-KJM-CKD, 2022 WL 7101973, at *8 (E.D. Cal. Oct. 12, 2022) (quoting *K.C. Multimedia,

18    Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th. 939, 955 (2009)); *see also* Cal.

19    Civ. Code § 3426.7(b) (superseding non-contractual civil remedies that are based upon

20    misappropriation of trade secrets).  Preemption by CUTSA applies to claims of intentional

21    interference with prospective economic relations.  *CTI III, LLC v. Devine*, No. 2:21-cv-02184-

22    JAM-DB, 2022 WL 1693508, at *3 (E.D. Cal. May 26, 2022); *Ikon Off. Sols., Inc. v. Rezente*,

23    No. 2:10-cv-01704-WBS-KJM, 2010 WL 5129293, at *4 (E.D. Cal. Dec. 9, 2010).

24        "On a motion to dismiss, the court considers 'whether, stripped of facts supporting trade

25    secret misappropriation, the remaining factual allegations can be reassembled to independently

26    support other claims for relief.'"  *Cutera, Inc. v. Lutronics Aesthetics, Inc.*, No. 2:20-cv-00235-

27    KJM-DB, 2020 WL 4937129, at *7 (E.D. Cal. Aug. 24, 2020) (citation omitted).  Importantly, the

28    "vast majority of courts that have addressed [the] issue" have concluded that CUTSA also

preempts "claims based on the misappropriation of information that does not satisfy the definition

of trade secret under CUTSA . . . ." *Loop AI Labs Inc v. Gatti*, No. 15-cv-00798-HSG, 2015 WL

5158461, at *3 (N.D. Cal. Sept. 2, 2015); *see also Rescue 1 Fin., LLC v. Complete Debt Relief,*

*LLC*, No. 23-cv-00982-CJC-KES, 2023 WL 6373884, at *7 (C.D. Cal. Aug. 24, 2023)

("[CUTSA's] preemptive sweep is broad—it supersedes all claims premised on the wrongful

taking and use of confidential and proprietary information, even if that information does not meet

the statutory definition of a trade secret.").

Plaintiff has chosen not to plead a CUTSA claim.  (Doc. No. 13 at 5.)  Nevertheless,

CUTSA preemption of other state law claims applies under California law even when the plaintiff

"has studiously avoided assertion of any trade secret claims."  *Total Recall Techs. v. Luckey*,

No. 15-cv-02281-WHA, 2016 WL 199796, at *7 (N.D. Cal. Jan. 16, 2016).  "[T]he determination

of whether a claim is based on trade secret misappropriation is largely factual."  *K.C. Multimedia*,

171 Cal. App. 4th at 954.

Here, the court agrees with defendant Enerpac and concludes that all of plaintiff's factual

allegations in support of its interference claim also support its trade secret misappropriation

claim.  Plaintiff has claimed trade secrets in its "[i]nformation about future projects in the

pipeline" that plaintiff "has identified as viable sources of future revenue," as well as in its

"quoting and costing of projects enabl[ing] it to bid competitively to customers in its field of

service."  (Doc. No. 29 at ¶ 18.)  Similarly, plaintiff's allegations in support of its interference

claim are that defendant Hales used information about plaintiff's South Carolina project in order

to divert that customer to defendant Enerpac.  (*See id.* at ¶¶ 1–13, 24, 25, 27, 30–32, 40, 56–66.)

Indeed, plaintiff specifically alleges that the wrongdoing underlying its interference claim is that

defendant Hales "informed the customer when working at Tri Tool that Tri Tool's solution would

not work, only to later submit Tri Tool's solution to the South Carolina client in an effort to move

the business" to defendant Enerpac.[2]  (*Id.* at ¶ 61.)  Consequently, once the factual allegations

---

[2]  Plaintiff alleges in its FAC that this allegation demonstrates that the conduct underlying the challenged state law claims "is separate and apart from any misappropriation of trade secrets" (Doc. No. 29 at ¶ 61), despite this allegation seemingly expressly detailing the misappropriation of plaintiff's trade secrets.

1   regarding the misappropriation of trade secrets and confidential information—including

2   "information about upcoming projects in its domestic pipeline of potential projects" (*id.* at

3   ¶ 46)—are stripped away, plaintiff has provided no factual allegations to support its challenged

4   state law claims. *See Better Meat Co. v. Emergy, Inc.*, No. 2:21-cv-02338-KJM-CKD, 2023 WL

5   3093849, at *3 (E.D. Cal. Apr. 26, 2023) (concluding that "after stripping the allegations of trade

6   secret misappropriation and related wrongdoing from Emergy's claims," no "allegations

7   remain[ed] to support" the counter-plaintiff's "common law claims"); *Race Winning Brands, Inc.*

8   *v. Gearhart*, No. 22-cv-01446-FWS-DFM, 2023 WL 4681539, at *6 (C.D. Cal. Apr. 21, 2023)

9   ("To the extent Plaintiff contends these claims are not superseded because they relate to

10  confidential information that may not be a trade secret, that distinction is immaterial.").

11       Moreover, plaintiff cannot avoid CUTSA preemption simply by claiming that certain

12  allegations apply only to its interference claim and that other allegations apply only to its trade

13  secret misappropriation claim. To allow such would in essence permit a plaintiff to avoid

14  CUTSA preemption by declining to assert a trade secret misappropriation claim, which, as noted,

15  is contrary to California law. *See Total Recall Techs.*, 2016 WL 199796, at *7; *see also Silvaco*

16  *Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 236 (2010) (holding that CUTSA preempts any

17  claim based on "conduct falling within its terms"), *disapproved on other grounds by Kwikset*

18  *Corp. v. Super. Ct.*, 51 Cal. 4th 310, 337 (2011).

19       Plaintiff argues that its allegations here are similar to those found not to be preempted by

20  the district courts' decisions in *Cutera*, 2020 WL 4937129, at *8, and *Zoom Imaging Solutions,*

21  *Inc. v. Roe*, No. 2:19-cv-01544-WBS-KJN, 2019 WL 5862594, at *6–*7 (E.D. Cal. Nov. 8,

22  2019). (Doc. No. 57 at 3–4.) In its decision in *Cutera*, the district court concluded that the

23  plaintiff's claim for tortious interference with prospective economic advantage was not preempted

24  by CUTSA insofar as it arose from the plaintiff's allegations that the defendant had induced the

25  plaintiff's employees to quit and instead do business with the defendant. 2020 WL 4937129, at

26  *8. Nevertheless, the decision in *Cutera* provides no basis upon which to deny the pending

27  motion to dismiss. After identifying some factual allegations that did "not necessarily arise out of

28  the same nucleus of facts as the CUTSA claim," the court in *Cutera* nevertheless dismissed the

9

1    plaintiff's claim for tortious interference with prospective economic advantage because those

2    factual allegations did not constitute "wrongful acts" as required to state such a claim.  2020 WL

3    4937129, at *8.  Similarly, to the extent plaintiff has provided any allegations that would not

4    support a claim for misappropriation of trade secrets or confidential information, those allegations

5    do not constitute a "wrongful act" as required here.  *See MedImpact Healthcare Sys., Inc. v.*

6    *IQVIA Inc.*, No. 19-cv-01865-GPC-LL, 2020 WL 5064253, at *18 (S.D. Cal. Aug. 27, 2020)

7    (dismissing the plaintiff's intentional interference with prospective economic relations claim

8    where the plaintiff had failed to allege "an act that is wrongful independent of the interference

9    itself").

10            The district court's decision in *Zoom Imaging Solutions* also fails to support plaintiff's

11    arguments, as that decision is distinguishable.  There, the district court considered the plaintiff's

12    allegations that the defendant had "lied to" one of the plaintiff's suppliers "about [the plaintiff's]

13    parent company Xerox shutting down all [of the plaintiff's] operations" and had told the supplier

14    that the plaintiff "was closed and would no longer be able to service any customers with [the

15    supplier's] equipment."  2019 WL 5862594, at *6.  The court concluded that the plaintiff's

16    common law claim based on these allegations was not preempted because that claim did "not rely

17    on defendants using the misappropriated information."  *Id.* at *7.  Here, by contrast, plaintiff has

18    alleged that "[i]nformation about future projects in the pipeline" that plaintiff "has identified as

19    viable sources of future revenue" is confidential information and even constitutes trade secrets.

20    (Doc. No. 29 at ¶ 18.)  Consequently, plaintiff's allegations here—namely, that defendant Hales

21    interfered with one of plaintiff's "projects in the pipeline" through his knowledge of "the

22    resources and plan developed at Tri Tool" (*id.* at ¶¶ 18, 62)—rely entirely on defendants allegedly

23    using the misappropriated information.

24            Ultimately, the court concludes that "the gravamen" of plaintiff's interference claim is the

25    misappropriation of its trade secrets and confidential information.  *K.C. Multimedia*, 171 Cal.

26    App. 4th at 961.  Accordingly, defendant Enerpac's motion to dismiss plaintiff's claim for

27    intentional interference with prospective economic relations will be granted.  In light of plaintiff's

28    failure to remedy the deficiencies in this claim after being given the opportunity to do so, its

1    failure to provide any new relevant factual allegations, and the clear futility of further leave to

2    amend, plaintiff will not be granted leave to amend as to this claim.  *See Foman v. Davis*, 371

3    U.S. 178, 182 (1962) (noting that "repeated failure to cure deficiencies by amendments

4    previously allowed" and "futility of amendment" may support a district court's decision to deny

5    leave to amend).

6    **B.    UCL Claim**

7            Plaintiff's UCL claim is predicated on two alleged unlawful acts by defendants:

8    (1) defendants' interference with plaintiff's economic relationship with its client on the South

9    Carolina project, and (2) defendant Hales's theft of plaintiff's hard drive upon his resignation.

10   (Doc. No. 29 at ¶ 81.)

11           Defendant Enerpac argues that plaintiff's UCL claim predicated on its interference claim

12   is also preempted by CUTSA.  CUTSA "displaces claims for unfair competition based on the

13   same nucleus of facts as a trade secrets claim." *Coast Hematology-Oncology Assocs. Med. Grp.,*

14   *Inc. v. Long Beach Mem'l Ctr.*, 58 Cal. App. 5th 748, 769 (2020) (citing *K.C. Multimedia*, 171

15   Cal. App. 4th at 958).  Plaintiff appears to acknowledge that its UCL claim, to the extent that

16   claim is predicated on its interference claim, rises and falls with the underlying interference

17   claim.  (*See* Doc. No. 57 at 4) (referring to "the interference cause of action (and its derivative

18   UCL cause of action)").  Therefore, for the reasons discussed above, to the extent plaintiff's UCL

19   claim is predicated on its interference claim, the UCL claim is also preempted by CUTSA.

20           Defendant Enerpac next argues that plaintiff's UCL claim asserted against it must be

21   dismissed to the extent that claim is predicated on defendant Hales's alleged theft of the hard

22   drive, as plaintiff has thereby "allege[d] only conduct by Hales alone."  (Doc. No. 54 at 13.)  The

23   court construes plaintiff's FAC to be asserting a UCL claim predicated on the alleged hard drive

24   theft against defendant Enerpac, rather than solely against defendant Hales, but neither plaintiff's

25   FAC nor its briefing on the present motion is entirely clear on this point.  Perhaps notably,

26   plaintiff did not respond to defendant Enerpac's argument in this regard in its opposition.  In any

27   event, the allegations in plaintiff's FAC do not support a UCL claim asserted against defendant

28   Enerpac premised on the alleged hard drive theft.  Plaintiff alleges in its FAC that defendant

11

1   Hales stole the hard drive before beginning his employment with defendant Enerpac (*see* Doc.

2   No. 29 at ¶ 36), and plaintiff does not allege that defendant Enerpac directed Hales to do so or

3   was even aware of the alleged theft when it occurred.

4        Accordingly, the court will grant defendant Enerpac's motion to dismiss plaintiff's UCL

5   claim asserted against it.  Again, in light of plaintiff's failure to remedy the deficiencies in this

6   claim after being given the opportunity to do so, its failure to provide any new relevant factual

7   allegations, and the clear futility of further leave to amend, plaintiff will not be granted leave to

8   amend as to this claim.  *See Foman*, 371 U.S. at 182.

9   **CONCLUSION**

10       For the reasons explained above,

11      1.    The motion to dismiss certain of plaintiff's claims asserted in its first amended

12               complaint filed by defendant Enerpac Tool Group Corp. ("defendant Enerpac")

13               (Doc. No. 54) is GRANTED as follows:

14               a.    Plaintiff's claim for intentional interference with prospective economic

15                       relations, asserted against defendant Enerpac, is dismissed without leave to

16                       amend;

17               b.    Plaintiff's claim for unfair competition in violation of California Business

18                       and Professions Code §§ 17200 *et seq.*, asserted against defendant Enerpac,

19                       is dismissed without leave to amend;

20      2.    Defendants shall file an answer as to the claims not challenged in this motion to

21               dismiss (Doc. No. 54) within twenty-one (21) days of service of this order;

22      3.    The parties shall file a joint status report regarding scheduling (*see* Doc. No. 4 at

23               2–3), by no later than March 31, 2025; and

24  /////

25  /////

26  /////

27  /////

28  /////

12

1         4.     The court sets this case for a status conference regarding scheduling on April 14,

2    2025 at 1:30PM before Judge Drozd, to be held by Zoom only.  Parties will

3    receive a Zoom ID number and password for the conference by email from Judge

4    Drozd's Courtroom Deputy Pete Buzo (PBuzo@caed.uscourts.gov).

5        IT IS SO ORDERED.

6    Dated:   **March 11, 2025**

7        DALE A. DROZD
         UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28